CITY OF SPRINGFIELD to use of CENTRAL NATIONAL BANK v. WEAVER *et al.*

In Banc, March 2, 1897.

1. **Cities:** ORDINANCE: PAVING STREET. Where a general ordinance of a city, after requiring the passage of a resolution declaring the paving of a street to be necessary, and its publication, and giving an opportunity of protest, declares that "the council shall have power to cause such improvement to be made, and thereupon the council shall, by ordinance, order the construction of the improvement proposed by such resolution, and direct the engineer to advertise for bids therefor," it is immaterial whether the resolution and its publication asking for bids precedes or follows the ordinance directing that such improvement be made.

---

* Defendant did not plead further, and judgment of ouster was entered.

2. ——: ——: ——: DETAILS OF WORK.   A city council has power to advertise for bids and contract for paving a street, before passing an ordinance ordering the work to be done, if such steps were taken by proper resolution.

3. ——: POWERS GIVEN AND IMPLIED.   Where the power is expressly given to a city council to cause the streets to be paved, all the powers essential to that object will be implied, as being mere details in the application of the powers given.

4. ——: ORDINANCE: SPECIAL TAX.   The special tax against the abutting owner should not be invalidated because advertisements for bids were made, and bids submitted and one of them accepted, before an ordinance was passed ordering the street to be paved.   Overruling, in part, *Keane v. Cushing*, 15 Mo. App. 96.

5. ——: SPECIAL TAX: STREET RAILWAY.   Where the city ordinances require a street railway to pay for paving that part of the street included within its rails, and the abutting owner to pay for paving the part between the curbing and the rails, a special tax against the property owner for his share of the cost is not void simply because the city has not forced the railroad to pave between the rails.   A contractor who has paved the street on both sides of the track, under a valid contract, should not be denied the right to enforce his tax bill by reason of the neglect of the city to force the railway company to pave the part within the rails.

6. Practice: SUBSTITUTION OF NEW PLAINTIFF.   Reilly, the contractor and payee of the tax bills, brought suit, and afterward assigned to a bank his bills, which were at the time the suit was brought pledged as collateral security at the bank.   The bank then was substituted, upon proper motion, as plaintiff.   *Held*, that this amendment was proper.

7. Tax Bills: SUBSTITUTED PLAINTIFF: TRUSTEE.   Where the bank which had held the tax bills as collateral turned them over to the payee for collection and authorized suit to be instituted, such authority constituted the payee the trustee of an express trust and gave him authority to sue in his own name under the statutes.

8. Cities: ACCEPTING BIDS.   A city has the undoubted power to reject a bid, advertise for new ones, and if no new ones are made to rescind the former order rejecting the bid, and accept and contract with such bidder.

9. ——: CONSTITUTIONAL STATUTE.   Those provisions of the law governing cities of the third class, which provide for the levy of assessments for paving streets, are not unconstitutional on the ground that the enforcement of such assessments would operate as the taking of the property of the landowner without due process of law.

*Appeal from Greene Circuit Court.*—Hon. James T. Neville, Judge.

Reversed and remanded.

*Massey & Tatlow* and *Goode & Cravens* for appellants.

(1) The court clearly erred in holding in this case that it was necessary to pass the ordinance ordering the work done prior to advertising for bids, and the failure so to do vitiated the proceedings. It is the charter that grants, limits and defines the powers of the council as a legislative body, which can neither be added to nor taken from by any ordinance passed by the city council. The power of the council as prescribed in the charter, to cause improvements to be made is: *First.* A preliminary resolution declaring that the council deems it necessary to improve the street. This resolution, under section 1498 of the Revised Statutes 1889, must first be passed and duly published, as provided by this section for two weeks. After its publication, if a majority of the property owners do not protest within ten days, the council is then vested with jurisdiction to go forward and carry out the improvement. *Second.* Under the statute, as construed by the supreme court, in addition to this resolution, an ordinance must be enacted ordering the improvement to be made. *City to the use of Gilfillan v. Eddy*, 123 Mo. 546. *Third.* In addition to the preliminary resolution and this ordinance, before letting any contract an estimate must be made by the city engineer, and the contract must be let within the estimate; that is, the contract price must not exceed the estimate. *Fourth.* Then the final ordinance making the levy and ordering the tax bill is all of the steps

that the charter prescribes. (2) The following authorities hold that it is the charter that grants, limits and defines the power of the council, and that it can neither be added to nor taken from by any ordinance of the city. *Heiskell v. Mayor, etc.*, 65 Md. 125; *Barnert v. City of Paterson*, 48 N. J. Law, 395; *Rex v. Ashwell*, 12 East. 22; *Welch v. Bowen*, 103 Ind. 252; 1 Beach on Public Corporations, secs. 492, 284; *Cape Girardeau v. Fougeu*, 30 Mo. App. 551; Dillon's Municipal Corporations, secs. 317-685-781. (3) Even if sections 8, 9 and 10 of the general ordinances of the city (as the court holds), do declare it necessary to pass an ordinance, ordering the improvement before advertising for bids, the council itself had a right to disregard such former ordinance, and by passing the ordinance, 1566, did disregard the same so far as this case is concerned. If these sections are correctly construed by the trial court, and either such sections, or ordinance number 1566, must fall, under the authorities it would be the former and not the latter. Dillon on Municipal Corporations [4 Ed.], p. 391, sec. 314; *City of Kansas v. White*, 69 Mo. 26; 1 Beach on Public Corporations, sec. 521; *Ex parte Wolf*, 14 Neb. 24; s. c., 14 N. W. Rep. 660; *Rex v. Ashwell*, 12 East. 22; *Burlington v. Estlow*, 43 N. J. Law, 13. (4) It is a general rule in this state, that while in these proceedings of special assessments all charter provisions must be substantially complied with by the city council, and all ordinances of the city substantially complied with by the contractor, agents and officers of the city, to entitle the contractor to establish a lien against the property of the citizen for the work, yet it has never been held that every formality and little detail must be complied with. On the contrary, it is expressly held that it is the substance and not the form to which the court looks, and hence, if there is a substantial

compliance, it is sufficient. *Sheehan v. Owen*, 82 Mo. 458; *City of St. Joseph v. Anthony*, 30 Mo. 538; *Cole v. Skrainka*, 105 Mo. 303. (5) The advertising for bids before the passing of the ordinance ordering the work done, by the most strained and subtle reasoning, could never be held to affect in the slightest degree the substantial rights of the parties. Hence, it is, at best, a mere barren technicality, void of any pretense of substance, and can not impair the validity of the proceedings. *State ex rel. City v. Birkhauser*, 56 N. W. Rep. (Neb.) 303; *State ex rel. Brown v. Town of Westport*, 116 Mo. 582. (6) That the plaintiff was entitled to recover under the court's finding of facts and the undisputed evidence in the case, there can be no question. The proceedings are regular and under the express provisions of the charter and the rulings of the supreme court of this state, the council had the power to improve any street, avenue, alley or lane, or any part thereof. The wording of the statute is: "To improve any street, alley or lane, or any part thereof." *Moran v. Lindell*, 52 Mo. 229; *Bacon v. Mayor*, 86 Ga. 301. (7) The railroad company having bound itself to pave between its tracks and for two feet on each side, after the city should cause the balance of the street to be improved in the same manner as the balance of the street was improved by the city, the proceedings of the council must be construed as intending to pave that portion of the street that it was not the duty of the street car company to pave; and the fact that the company has not performed its duty constitutes no valid ground for objection of the property owner and is no defense to this action. *Bank v. Haywood*, 62 Mo. App. 550; *Voght v. City of Buffalo*, 31 N. E. Rep. (N. Y.) 340; *Bacon v. Mayor, etc.*, 86 Ga. 301; s. c., 12 S. E. Rep. 580. (8) The council clearly had a right to rescind its action in setting aside the

acceptance of Reilly's bid.  *Ross v. Stackhouse*, 16 N. E. Rep. (Ind.) 501; *Welch v. Bowen*, 103 Ind. 252; *Board v. Fullen*, 111 Ind. 410.  (9) All the city authorities concerned in this paving, the contractor and the abutting property owners, by their contract and acts construed the proceedings to intend the paving of only that part of the street which the railway company was not bound to pave.  In the construction of a doubtful and ambiguous law, the contemporaneous construction of those who are called upon to act under the law and were appointed to carry its provisions into effect, is entitled to very great respect.  *Edwards v. Darby,* 12 Wheaton, 206; *State of Missouri ex rel., etc., v. Severance, Mayor, etc.,* 49 Mo. 401; *United States v. Moore,* 95 U. S. 760, p. 763; *Brown, Adm'x, v. United States,* 113 U. S. 568; *Chesnut v. Shane's Lessee,* 16 Ohio, 599; 23 Am. and Eng. Ency. of Law, under Statutes, pp. 339 and 340, citing cases in nearly every state in the union.  (10) The bank was rightly permitted to be substituted as relator.  When not prejudicial to the adverse party, amendments should be freely allowed.  *Utley v. Tolfree*, 77 Mo. 307.  The name of one party plaintiff may be struck out and another substituted, even at the trial.  *Tayon v. Ladew*, 33 Mo. 205.  There is no error in admission of new party plaintiff after the institution of suit, where it is made to appear that the cause of action has been assigned to him for value by the original plaintiff.  *Wellman v. Dismukes*, 42 Mo. 101; *Todd v. Crutsinger*, 30 Mo. App. 145.  On the trial of an interplea if it is objected that the interpleader claims as *cestui que trust*, he may substitute his trustee as interpleader.  *Winklemaier v. Weaver*, 28 Mo. 358.  Where plaintiffs brought suit as a corporation, it is proper to permit them to amend by substituting their individual names

and allege that they were co-partners when the suit was brought. *Ward v. Pine*, 50 Mo. 38.

*James R. Vaughan* and *Barbour & McDavid* for respondents.

(1) The council had no power to advertise for bids or to contract for said work until after the passage of such ordinance. In order to entitle the city or contractor to recover from the abutting property owner the expense of paving a street, or other local assessment, it must appear that there has been a fair and substantial compliance with all the conditions precedent, whether prescribed by charter or by ordinance. In other words, a material condition precedent prescribed by ordinance is just as binding on the city and the contractor as a provision of the charter, provided that it does not conflict with the charter. The ability of the city to create a lien on the property of the citizen is founded, not in any absolute or preexistent right, but rests exclusively in an adherence to the method prescribed by ordinance in pursuance of the authority contained in the charter. *Cole v. Skrainka*, 105 Mo. 303; *Kiley v. Oppenheimer*, 55 Mo. 374; *Leach v. Cargill*, 60 Mo. 316; *Clapton v. Taylor*, 49 Mo. App. 126; *Construction Co. v. Geist*, 37 Mo. App. 512. (2) Before the city is authorized to contract for, or have constructed, any public improvement at the cost of the abutting property, it must comply with certain requirements prescribed by the charter and ordinance of the city. What are those requirements? The city council must first pass a resolution and have it published for two consecutive weeks in the paper doing the city printing. This resolution must define the character and extent of the work proposed to be done, and it must designate the street or portion thereof to be so improved. This

resolution is merely a prerequisite preliminary step that must be taken before the council has any right to proceed; it is jurisdictional, and without it the city council would be absolutely powerless to issue a legal tax bill against private property; but while this resolution is jurisdictional it does not, within itself, give the council the right to contract for the improvement. The resident owners of the abutting property have ten days after the publication of this resolution in which to protest against the making by the city of the improvement contemplated by the resolution; if a majority of such owners do protest in manner provided, then the power of the council to have the improvement made is at an end. If no protest is made, then the council is authorized to proceed. How shall it proceed to have the improvement made? Only in the way provided by the city's charter and its ordinances, to wit: By the passage of a special ordinance, which shall authorize and order the improvement designated in the preliminary resolution to be done. This special ordinance, not the resolution, gives the council the right to contract for the improvement; the power to pass this ordinance depends upon the resolution and failure of a majority of the property owners to protest, while the power and authority of the council to make a contract for the contemplated improvement depends on both the resolution and the special ordinance. City Charter, sec. 1498, R. S. 1889; sec. 8, City Ordinance; *Hoyt v. City of East Saginaw*, 19 Mich. 39; *City to use v. Eddy*, 123 Mo. 546; *Forbis v. Bradbury*, 58 Mo. App. 506. (3) Respondent contends that there can be no recovery in this case for the reason that the preliminary resolution passed by the city council contemplated and provided for the paving of the entire roadway on Walnut street, whereas only that portion of the street lying outside the car

tracks has been paved; the portion lying between the car track is still unpaved, and hence the tax bill is void. *Moran v. Lindell*, 52 Mo. 229; *City of Independence v. Gates*, 110 Mo. 374; *Heman Construction Co. v. Loevy*, 64 Mo. App. 430; *City of Stockton v. Whitmore*, 50 Cal. 554; *McBean v. Redick*, 96 Cal. 191 (31 Pac. Rep. 7); *Henderson v. Lambert*, 14 Bush. 24; Cooley on Taxation, p. 656, note 3; *City to use v. Clements*, 49 Mo. 552; *Kiley v. Cranor*, 51 Mo. 541; *Brick Mfg. Co. v. Hamilton*, 51 Mo. App. 120; *Galbreath v. Newton*, 30 Mo. App. 392. (4) The passing of a resolution of intention is jurisdictional in its nature, and was by Judge COOLEY, in *Hoyt v. Saginaw, supra*, likened to a summons. He characterizes such resolution as a "necessary preliminary," "preliminary and jurisdictional" and as "indispensable to give the court jurisdiction as is process or the voluntary appearance of parties in civil actions to give jurisdiction to a court." A like importance is given this resolution by our supreme court in *City to use v. Eddy*. This resolution, as was said in 58 Mo. App. 568, is a proposal by the council which the property owner, through a protest, has the right to reject, or accept by failure to protest, and if accepted has a right to have the work done as proposed. If the resolution covers the entire street such owners might have grave objections to improving only a portion of the street or "detached portions." *McBean v. Redick*, 96 Cal. 191; *City of Stockton v. Whitmore*, 50 Cal. 554; *Steffen v. Fox*, 124 Mo. 630. (5) The case of the *City of Independence v. Gates*, 110 Mo. 374, is an important one, as bearing upon the question of the noncompletion of the work. In that case the court recognizes the importance of the completion of the entire street to the property owner as affecting the value of his property. The court should

remember in this connection that the only ground upon which the levy of street assessments against abutting property can be sustained, or at least has been sustained, is that they increase the value of the property. (6) The notice of letting the contract affects the "substantial rights" of the citizen, and in this case was given without any authority, as neither council nor other city official had any authority to order or give such notice until the special ordinance was passed. Municipal bodies must not only remain within the limits of their charter, but when they act must proceed in the manner provided by charter and ordinance. *Clapton v. Taylor*, 49 Mo. App. 117–126; *Cole v. Skrainka*, 105 Mo. 303; *Keane v. Cushing*, 15 Mo. App. 96; *Kiley v. Oppenheimer*, 55 Mo. 374; *Leach v. Cargill*, 60 Mo. 316. In the case at bar, the advertisements for bids, the acceptance thereof, and the award of the contract, were all done before the special ordinance was even passed, much less before the taking effect thereof. (7) Respondents concur with suggestions of appellant's attorneys that a contemporaneous construction of an ambiguous law or contract by the parties to it throws light upon its meaning. Such construction must be shown by the acts of the parties. The resolution and ordinance referred to the entire street, and on the same day that Mr. Reilly began the work, and thereby indicated that he was intending to omit the middle of the street, the owners protested. See protest in record page 101. This shows what they thought about it. The contractor made a bid of $1.75 per square yard for the paving of the street between the rails, and two feet on each side, in his original bid, and the city council, as soon as the protest was served upon them, passed resolutions requiring the company to pave and gave it notice. Thus was indicated the understanding of all the parties that the entire street was to be paved. Appellant

insists that it was the duty of the street railway company to improve the street between the rails. The facts on this point of the case are: The city undertook to pave the entire street and took the promises of two separate contractors to do the work; one of them failed to do its part; the street was left in about as bad or worse condition than in the start, and now the city seeks to recover for the benefit of the contractor for this partial performance, and make the property owners pay *nolens volens. Gilmore v. City of Utica*, 121 N. Y. 561; *People v. Brooklyn*, 65 N. Y. 349; *Oshkosh R'y v. Winnebago Co.*, 61 N. W. Rep. 1107; *Chicago R'y v. Milwauke*, 62 N. W. Rep. 417; *Brick & Terra Cotta Co. v. Hull*, 49 Mo. App. 433. On the subject of the non-completion of the work of paving Broadway, New York City, by omitting to pave between the rails under a resolution which covered the entire street, the court says: "No reason is seen why the engineer might not have made a contract for paving ten feet instead of thirty-seven. If he had power to omit five feet, he could have omitted as much as he pleased." *Cram v. City of Buffalo*, 36 Hun, 638; *Stebbins v. Kay*, 123 N. Y. 31; 25 N. E. Rep. 207; *In re Pennie*, 45 Hun, 391; s. c., 108 N. Y. 364; s. c., 15 N. E. Rep. 611; *Merritt v. Portchester*, 71 N. Y. 312; *In re Commissioners of Central Park*, 35 How. Pr. 277; *State v. Jersey City*, 27 N. J. Law, 536; *City of Henderson v. Lambert*, 14 Bush. 24; *Owners of Ground, etc., v. Mayor of Albany*, 15 Wend. 374. There was no estimate made for all of the work as required by law and the ordinances, but only a partial estimate, and this rendered tax bill and all subsequent proceedings void. *City of Independence v. Briggs*, 58 Mo. App. 241. Section 2, city ordinance, provides in explicit terms that a person whose bid is accepted for public work shall within ten days after the acceptance of his bid by the council enter into contract and bond.

as required, and a failure to do so on the part of the bidder constitutes a forfeiture of his contract. We contend that this provision is mandatory, and that when Reilly failed and neglected to comply with provisions of the ordinance it was the duty of the council to open the new bids which they received after Reilly's failure to enter into contract, and after his bid was annulled by the council. For this reason respondent has contended, and now contends, that the council had no power whatever to award any contract to.Reilly; therefore, his contract was void and the tax bills issued pursuant thereto are illegal and constitute no charge against the property of this respondent. *Perine v. Forbush*, 32 Pac. Rep. (S. C. Cal.) 226; *Shaw v. Randall*, 15 Cal. 385; *Himmelman v. Danos*, 35 Cal..441; *Brock v. Luning*, 89 Cal. 316 (26 Pac. Rep. 972); *McBean v. Redick*, 96 Cal. 191 (31 Pac. Rep. 7). The court erred in permitting the Central National Bank, against the objection of the defendant, to be substituted as plaintiff in the place of James Reilly. The uncontroverted evidence, as set out in the record, shows that at the time Reilly instituted this suit the Central National Bank was the owner and legal holder of the tax bill sued on. A total substitution of party plaintiff is not permissible in this case, because such an amendment amounts to a complete change of the original cause of action; or rather it amounts to the substitution of a cause of action where before such amendment no cause of action whatever existed. If the Central National Bank, since the institution of this suit by James Reilly, has acquired from him the ownership of the tax bill in suit, then it had the right to be substituted as plaintiff; but if its right and ownership therein were acquired before the suit was instituted, then it had no right to be substituted. The evidence shows conclusively that its ownership was acquired before the suit was instituted, and

that the relation of the bank to the said tax bill never changed during the pendency of the suit. *Courtney v. Sheehy*, 38 Mo. App. 291; *Altheimer v. Teuscher*, 47 Mo. App. 284; *Hall v. School District*, 36 Mo. App. 23; *Clements v. Greenwell*, 40 Mo. App. 594; *Todd v. Crutsinger*, 30 Mo. App. 145. For the reason that the law regulating cities of the third class, which provides for the levy of assessments for street paving, is unconstitutional and void, that law, section 1496, provides that every such special tax bill issued under the provisions of that law shall be a lien upon the abutting lot until paid. No provision is anywhere made for notice of the assessment to the property owner. The assessment of the tax is to be levied after the work is done at a time of which the property owner can not be advised, as the law nor ordinances provide any particular time. He is given no day in court in or at which to plead the insufficiency of the proceedings, mistakes, defects or insufficiency of the work; but by the *ipse dixit* of the council it becomes a full-fledged lien and incumbrance upon his property which will cloud his title, even though such proceedings are ever so defective, and as for that, absolutely void, and so remains forever until paid. *The City of St. Louis v. Richeson*, 76 Mo. 470; *City of St. Louis v. Ranken*, 96 Mo. 497; *Saxton National Bank v. Carswell*, 126 Mo. 436.

### OPINION IN DIVISION ONE.

MACFARLANE, J.—This suit is on a special tax bill for the cost of paving Walnut street in the city of Springfield in front of the property of defendants and to enforce a lien therefor. The action was commenced in favor of J. B. Reilly, the contractor. After an answer had been filed by defendants the Central National Bank, as assignee of Reilly, was, under objection

of defendants, substituted as plaintiff, by an order of court.

To the amended petition of the bank, defendants filed an answer, in which they plead that the resolution declaring the necessity of paving said street embraced the entire street from curb to curb; that the ordinances and law governing cities of the third class like Springfield require that before any contract could be let, or any advertisement or estimate made, or bid received, that an ordinance authorizing the work to be done should first be passed; that no ordinance was passed in this case until long after the estimate and advertisement had been made, which was only a partial one, covering only a part of the street, and omitting therefrom more than eight feet in the center of the street; that said advertisement, estimates, bid, and contract, under which the work was done, were illegal and void.

The answer further states that the ordinance, as well as said resolution, provided for paving the street its entire width, and that this was never done, but that the space between the street car rails, for the entire length of street, remains unpaved; that in consequence the said space constitutes a depression or ditch in the middle of the street lined by street car rails, and is several inches deep, in which water flows, washes out holes, and stands in the form of mudholes; that the beauty of the street is marred; that the paving is of no substantial benefit to the property, and averred other facts showing at least that the work, as done and to the extent done, was of a great deal less value as an improvement, than the same work would have been worth if the remainder of the street had been completed.

Upon a trial the court found for the defendants and rendered judgment accordingly. Plaintiff appealed to the St. Louis court of appeals, by which the cause

was transferred to this court as involving a constitutional question.

Walnut street is sixty feet in width; twelve feet on either side thereof is devoted to sidewalks, thus making the roadway thirty-six feet wide. In the middle of the street is a street railway track five feet wide, running the entire length of the street.

On the fourth of November, 1891, the city council passed a resolution declaring the necessity of improving Walnut street by paving the same "with first-class brick pavement on both sides thereof," and that such improvements should be made "in accordance with the plans, specifications, and estimates of the city engineer now on file in the office of the city clerk."

This resolution was duly published. No protest of the property owners was made.

On the seventh day of January, 1892, a resolution was adopted directing the engineer "to advertise for bids for the construction of brick pavement of the first class on Walnut street."

This resolution was duly published.

On the second day of February, 1892, the bids were opened and that of James B. Reilly "for first-class brick pavement on both sides of Walnut street" was accepted and the contract awarded to him.

On May 3, 1892, a resolution of the council was adopted annulling the former action of the council awarding the contract to Reilly, and the engineer was ordered to readvertise for bids.

Under this resolution the engineer advertised for bids, but none were ever acted upon.

On May 17, 1892, the action of the council annulling Reilly's contract was reconsidered and the street committee was directed to enter into contract with him as per his bid accepted February 2, 1892.

On May 25, 1892, the council passed an ordinance ordering that Walnut street "be paved with brick pavement of the first-class," and awarding the contract therefor to Reilly at his bid.

On the thirtieth of May, 1892, the contract was made and approved.

On July 5, 1892, defendants and other property owners on said street protested against the improvement.

On July 7, 1892, the council passed a resolution directing the mayor to notify the railway company to pave the street between its rails and two feet on either side thereof. The mayor did so.

The ordinance which authorized the railroad company to construct and operate its railway on the street required it to make such improvement.

The railway company did pave the part of the street outside the railway track, as required, but did not pave that part between the rails nor did Reilly do so under his contract.

Five feet in the center of the street were thus left unpaved.

At the time of these proceedings a general ordinance of the city was in force, section 15 of which provides that where a street is ordered paved the pavement should extend on each side from the curb to the center line, "provided, that where the street being improved had a street or other railway track or tracks thereon, the property abutting on such street shall only be charged with the expense of improving that portion thereof between the outside gutter lines and that portion of the street to be improved by the street or other railway owning such track or tracks."

Section 8 provides for passing and publishing a resolution declaring the improvement necessary, and if protest is not filed, provides that the council shall have

power to cause the improvement to be made and to charge the cost as a special tax upon the abutting property, and declares that "thereupon the council shall, by ordinance, order the construction of the improvement proposed by such resolution and direct the engineer to advertise for bids therefor."

I. The court declared the tax bill invalid for the reason that the ordinance ordering the improvement was not passed until 'after the advertisement for bids had been made.

Both the statute, and the general ordinance of the city, require the proceeding to be initiated by passing by the council, and causing to be published, a resolution declaring the necessity of the improvement. They provide that, "if a majority of the resident owners of the property liable to taxation therefor shall not, within ten days thereafter, file with the clerk of said city their protest against such improvement, then the council shall have power to cause such improvement to be made, and to contract therefor and to levy the tax as herein provided." R. S. 1889, sec. 1498.

The resolution in respect to paving Walnut street was regularly adopted and published, and no protest having been filed the power to have the work done, and to cause the expense thereof to be charged against the abutting property as special taxes, became vested in the council.

In order to execute this power the charter required an ordinance to be passed requiring the improvement to be made. This is made a condition precedent to the exercise of the existing power and is held to be essential to the validity of the proceedings. *City to use v. Eddy*, 123 Mo. 558; R. S. 1889, sec. 1495.

By the resolution, and its publication, jurisdiction of the subject-matter and of the parties interested was acquired. The enactment of an ordinance to pave the

street was one necessary step in the proceedings, but the charter is silent as to the relative time and place in the proceeding at which it should be made. Under the charter provisions without reference to the ordinances of the city, the enactment of an ordinance would be sufficient if made at any time before work on the improvement was commenced. Indeed, the logical order of procedure would postpone the ordinance until after it was determined that a proper contract for making the improvement could be secured.

But a general ordinance of the city after requiring the passage of a resolution and its publication, and giving opportunity to protest, declares that "the council shall have power to cause such improvements to be made * * * and thereupon the council shall, by ordinance, order the construction of the improvement proposed by such resolution, and direct the engineer to advertise for bids therefor."

Defendants insist that the order in which these steps shall be taken is fixed by the ordinance, and a departure therefrom, by advertising for bids before passing the ordinance, was fatal to the entire proceeding. In this contention they were sustained by the trial court.

There can be no doubt that the council possessed, not only the powers expressly granted, but also those essential to the declared object and purpose of the corporation. The power of the council to cause the streets of the city of Springfield to be paved is expressly given and all the powers essential to that object will be implied. The charter makes no provision for the details under which contracts for paving the streets shall be made, but intrusts them to the sound discretion and judgment of the council. While the statute governing cities of the third class does not require contracts to be let out to bidders, it makes no contrary or inconsistent

requirement. The council, then, had the undoubted power to require contracts to be let in that manner. The general ordinance requires, as conditions precedent to the exercise of the power to levy the special tax, that the council shall not only pass an ordinance directing the improvements to be made but to cause advertisements for bids therefor to be published. The charter requires the former but not the latter step to be taken. These are independent steps, one in no manner depending upon the other. There is no substantial reason why one should be performed before the other; or that they should be done contemporaneously, as a literal reading of the ordinance implies. The ordinance was passed and the advertisement for bids was made. The order in which these acts were done is not a matter of substance and should not invalidate the tax. *Cole v. Skrainka*, 105 Mo. 309.

The case of *Keane v. Cushing*, 15 Mo. App. 96, so far as it conflicts with these views, is not approved.

II. Defendants insist that, though the court may have erred upon the point decided, still the judgment is right upon other grounds, as disclosed by the record. and should be affirmed.

The record shows that the center of Walnut street is occupied by the track of a street railway and that the space between the rails was left unpaved. The contention is that the preliminary resolution, passed by the council, contemplated the improvement of the entire street and a failure to pave the space between the rails renders the tax to pay the cost of what was paved absolutely void.

The resolution declared the necessity of improving Walnut street "by paving the same with first-class brick pavement on both sides thereof." This preliminary resolution was required by section 8 of an ordinance entitled: "An ordinance defining the manner

in which paving. * * * and guttering of streets shall be done," etc. The same ordinance requires streets to be paved from their outside gutter line to the center thereof at the cost of abutting landowners, except in case the street should be occupied by a railway track the corporation owning the railway is required to pave between the rails. The corporation owning the railway on Walnut street, by the terms of its license to use the street, was required to pave the part thereof occupied by its track and two feet outside.

Reading the resolution, in connection with these ordinances, there can be no reasonable doubt that the improvement contemplated by the resolution only included that part of the street on each side of the railway track, and was not intended to include the part occupied by it. It must be held therefore that the resolution imparted notice to defendants, and others interested, of the extent of the improvement. *Farrar v. St. Louis*, 80 Mo. 393.

The council had power to cause the streets of the city to be paved. This general power vested in the council the right to determine the character and extent of the improvement that should be made. The charter does not require the entire width of the streets to be paved at the cost of the property owners. Such matters of detail are properly left to the judgment of the municipal authorities. Objections should have been addressed to the council by way of protest, as is provided by the charter.

In the case of *Moran v. Lindell*, 52 Mo. 229, only a driveway in the middle of the street was improved. The powers contained in the charter authorizing the paving of streets were general. A special tax against the property abutting upon the street for the cost of making the carriageway was sustained.

It was the duty of the railway company to pave

the part of the street used for its track, and the city should have required it to do so. But a contractor who has paved the street, on each side of the track, under a valid contract, should not be denied the right to enforce his tax bill by reason of the neglect of the city to perform its duty by enforcing the obligation of the railway company. Nor should the contractor be made responsible for the unsightly and inconvenient condition in which the street was left by reason of the unpaved track of the railway.

III.   It appears from the record that the suit was originally brought in the name of Reilly to whom the tax bills were issued and made payable. At that time the bill was held by the Central National Bank as collateral security. Pending the suit the bill was assigned to the bank, which was, by leave of court, substituted as plaintiff and an amended petition was filed in the name of the bank as plaintiff.

Objection was made below to this amendment and substitution which was overruled by the court. It is now insisted that the amendment was improperly permitted for the reason that it substitutes a cause of action where none existed before such amendment was made. The question rather is: Could Reilly sue on the bill while the plaintiff bank held it as collateral security? If he had that right and the bill was afterward absolutely transferred to plaintiff, the statute authorized the substitution. R. S. 1889, sec. 2204.

The evidence shows that the bank, which held the tax bills as collateral, turned them over to Reilly the payee for collection, and authorized the suit to be instituted if necessary. This authority constituted Reilly the trustee of an express trust under the decisions of this court and gave him the right to sue in his own name under express provisions of the statute. He had possession of the bill and held the legal title; and

the fact that it was impressed with a trust to the bank did not deprive him of the right to sue in his own name. R. S., sec. 1991; *Snider v. Express Co.*, 77 Mo. 527, and cases cited. *Fisher v. Patton*, 134 Mo. 32.

IV.   Section 6 of the general ordinance defining the manner of paving streets provides that "in case any person whose bid is accepted shall fail, refuse, or neglect to enter into written contract and proper bond herein required within ten days after the acceptance of his bid, the certified check deposited by him shall be forfeited to the city, and the mayor shall take the necessary steps to recover the amount of the bond deposited by such bidder," etc.

Defendants insist that under this provision Reilly forfeited his right to a contract by reason of a failure to enter into a written contract and give the required bond within ten days after the acceptance of his bid.

The ordinance neither by express terms nor by necessary implication provides for a forfeiture of the contract in case of such failure.

At most the power in the council to rescind the bid is implied.   The provision was intended to protect the city by avoiding delays, complications with subsequent bidders, and loss and damage from the default of the bidder.   It was not intended to limit the city to ten days in which to accept a written contract and bond.

The council had the undoubted power at a subsequent meeting to reconsider and rescind the order rejecting the bid of Reilly, and thereafter to accept his bid and let the contract to him.   It had acquired jurisdiction over the parties interested and the subject-matter.   The bids were before it; the bid of Reilly was within the estimate of the engineer; the acceptance or rejection of the bid and making the contract were mere matters of business detail intrusted to the council and

over which it had power to act in such a manner as it might consider to be for the best interest of the city.

V.   Defendants question the constitutionality of those provisions of the law governing cities of the third class, which provide for the levy of assessments for paving streets, on the ground that the enforcement of such assessments would operate as the taking of the property of the landowner without due process of law.

The law is not obnoxious to that provision of the constitution which prohibits the taking of property without due process of law.   The publication of the required resolution gives due notice to the landowner of the commencement of the proceeding and the owner is required to be made a party to a suit to enforce a lien on his property for the tax assessed and is entitled to notice thereof and his day in court.   *St. Louis v. Ranken*, 96 Mo. 497; *Saxton National Bank v. Carswell*, 126 Mo. 436, and cases cited in each.

The judgment is reversed and cause remanded. All concur.

OPINION IN BANC.

PER CURIAM (BARCLAY, C. J., and MACFARLANE, BURGESS, ROBINSON, and BRACE, JJ.).—The opinion delivered in this cause by Judge MACFARLANE, in the first division of the court, is approved and adopted as the opinion of the court in banc.   Accordingly the judgment of the circuit court is reversed and the cause remanded, all the judges concurring, except Judges GANTT and SHERWOOD, who are absent.