## CITY OF SAND SPRINGS et al. v. HOHL et al.

No. 13878—Opinion Filed May 29, 1923.

Rehearing Denied June 26, 1923.

(Syllabus.)

1. **Municipal Corporations—Street Improvements — Special Assessments — Cost of Storm Sewers.**

Under the provisions of article 12, Comp. Stats. 1921, the mayor and city council are authorized to permanently improve the streets by paving, guttering and draining the same, and where proceedings have been taken under the provisions of said statute for paving and draining the streets, and a storm sewer has been constructed under the pavement for the purpose of draining the street of the surface waters which would naturally flow over the street, and protecting and preserving the pavement, such storm sewer is a part of the street improvement, and the cost is properly taxable against the property abutting upon such street.

2. **Same—Statutes.**

Although authority exists by virtue of sections 462 to 471, inclusive, Rev. Laws 1910,

for the construction of storm sewers and provision is made for taxing the cost of such improvement, this does not preclude the city from constructing storm sewers in connection with the paving of the streets where the construction thereof is a necessary incident to the proper paving and drainage of such street, and the cost thereof may be taxed against the abutting property owners under the provisions of article 12, Comp. Stats. 1921.

### 3. Same.

The fact that a storm sewer so constructed receives surface water from territory outside of the improvement district does not prevent the cost thereof from being taxed against the abutting property owners where the sewer only receives the water which naturally flows over such street and which would naturally drain over such street if not received by the storm sewer.

### 4. Same—Paving and Storm Sewer One Improvement.

The construction of the pavement and the construction of the storm sewer were not separate improvements so as to require separate proceedings; but the proceedings only covered one subject and that was improvement of the street, and the construction of the paving and the storm sewer was properly included in one proposition.

### 5. Same—Award of Contract—Validity.

Where the city council had acquired jurisdiction of the improvement proceeding, and at the time and place designated in the advertisement accepted a bid, but thereafter on the same day rejected all bids and ordered a new advertisement, and thereafter reconsidered its action and accepted the same bid again, and awarded a contract based thereon, held, that such contract was valid.

Error from District Court, Tulsa County; Valjean Biddison, Judge.

Injunction by Florence F. Hohl and other property owners against the City of Sand Springs, its officers, the Green Construction Company, and Thos. L. Green to restrain enforcement of special assessments for street improvements. Judgment for plaintiffs, and defendants bring error. Reversed, and remanded, with directions.

F. E. Riddle. Paul P. Pinkerton. George B. Rittenhouse. G. A. Paul, and Thomas Swanson, for plaintiffs in error.

Poe & Lundy, Joe. E. Curran. and R. E. Morgan, for defendants in error.

COCHRAN, J. Suit was filed by defendants in error in the district court of Tulsa county to enjoin plaintiffs in error from enforcing special assessments against the property in certain improvement districts in the city of Sand Springs, and also to enjoin

the issuing and selling of paving script. The parties will hereinafter be referred to as plaintiffs and defendants as they appeared in the trial court.

Upon the trial of the case in the district court, the special assessments were declared void and the injunctive relief requested by plaintiffs was granted, from which judgment defendants have prosecuted this appeal. The judgment of the trial court, holding the asessment void, was based upon the finding by the trial court that the assessment covered not only the cost of the paving, but the cost of a storm sewer constructed under the pavement, and that the city had no authority to construct the sewer and assess the cost thereof against the property of the plaintiff under the provisions of the paving statute; that a storm sewer could only be constructed under the general statute authorizing the construction of sewers by municipalities.

The plaintiffs contend that the action of the trial court is correct: (1) Because the city had no authority to include the cost of a storm sewer in an improvement district formed for the purpose of paving and improving the streets; and (2) the proceedings are void for the reason that the paving improvement and the sewer improvement were not acted upon separately and separate bids were not received upon each. In support of the first contention, the plaintiffs refer to section 462 to 471, inclusive, Rev. Laws 1910. Section 462 provides:

"In municipal corporations having a bona fide population of not less than one thousand persons, the mayor and council or board of trustees shall have power to cause a general sanitary, storm, or combination sewer system to be established, which shall be composed of three classes of sewers, to wit: public, district and private sewers."

The subsequent sections provide the proceedings which shall be followed in constructing such sewers and the manner in which the assessments shall be made to pay for such improvements. Attention is called to the fact that this statute providing for the construction of sewers was amended in the revised statutes of 1910 by including storm sewers. As revised, there can be no question about this statute authorizing the construction of storm sewers as well as sanitary sewers, but we are of the opinion that this statute does not interfere with the authority of the city to provide for the proper drainage of the streets as a necessary incident to paving such streets under the

provisions of art. 12, Comp. Stats. 1921. Secton 4583, Comp. Stats. 1921, provides:

"The mayor and council of any city are hereby empowered to establish and change the grade of any street, avenue, lane, alley or other public place in such city, and to permanently improve the same by paving, macadamizing, curbing, guttering, and draining the same, including the installing of all manholes and catch-basins whenever, in their judgment, the public convenience may require such improvements, subject only to the limitations prescribed in this chapter."

Section 4590 provides:

"When the mayor and council shall deem it necessary to grade, pave, macadamize, gutter, curb, drain, or otherwise improve any street, avenue, alley, or lane, or any part thereof, within the limits of the city, they shall require the city engineer to prepare complete and accurate specifications and estimates, and upon approval thereof by the mayor and council, he shall file the same with the city clerk, whereupon said mayor and council shall, by resolution, declare such work or improvement necessary to be done."

Section 4595 provides:

"Whenever the petition provided for herein is presented or when the mayor and city council shall have determined to pave or improve any street, avenue, lane, alley or other public place, and shall have passed the required resolution, the mayor and council shall then have the power to enact all ordinances, and to establish all such rules and regulations as may be necessary to require the owners of all property subject to assessment to pay the cost of such improvement, to cause to be put in and constructed all water, gas and sewer pipe connections, to connect with any existing water, gas or sewer pipes in and underneath the streets, avenues, lanes and alleys, and other public places where such public improvements are made, and all costs and expenses for making such connections not paid for by the property owner shall be taxed against such property, and shall be included in and made a part of the general assessment to cover the cost of such improvement."

The authority to construct a storm sewer for the drainage of the streets in an improvement district in connection with the paving of such streets has been upheld by this court in the case of Oklahoma City v. Shields, 22 Okla. 265, 100 Pac. 559, in the following language:

"Can the costs and expenses of instituting and laying said drainage pipes be taxed against the property fronting and abutting on said street along which said pipes are laid? Yes, we think it clearly provided for in section 1 of the act under consideration, which reads as follows: 'The mayor and council of cities of the first class are hereby empowered to establish and change the grade of any streets, avenues, lanes, alleys, and other public places in such cities, and to permanently improve the same by paving, macadamizing, curbing, guttering and draining the same, including the installing of all manholes, catch basins and necessary drainage pipes.' It also appears from section 5 of the act that authority is expressly given for these and all other purposes. That portion of section 5 applicable reads as follows: 'As soon as the contract is let and the cost of such improvement, which will also include all other expenses incurred.' etc. It is apparent from the language of the statute that the matter of drainage, as well as all other expenses, was intended to be, and is, covered by the act."

The plaintiffs contend that this decision is not controlling because the provision of the statute under consideration was amended in the revision of 1910 so as to omit the words, "and necessary drainage pipes," and assert that the Legislature omitted the same because the procedure for the construction of sewers was provided for under other provisions of the statutes. We are of the opinion that the omission of the words, "and necessary drainage pipes," in no manner changes the authority of the municipality to assess the cost of a storm sewer where the same is a necessary incident to the paving of the street.

At the time of the decision in the case of Oklahoma City v. Shields, supra, chapter 10. art. 1, Laws of 1907-8, provided:

"The mayor and council shall have power to levy a tax not exceeding five mills in one year, upon all taxable property of said city, for the purpose of constructing storm sewers and outlets in connection with the construction of the improvements herein provided for."

Yet this court held that the cost of constructing the drainage incident to the paving of the improvement districts could properly be charged against the abutting property owners instead of proceeding under the above section.

The plaintiffs cite the case of Roebling v. City of Cincinnati, 102 Ohio St. 460, 132 N. E. 60, to support the contention that the provisions of section 4583, providing for the paving, macadamizing, curbing, guttering, and draining of streets, are not broad enough to authorize the construction of storm sewers for the drainage of the street. The language of the opinion relied upon by the plaintiffs is as follows:

"The term 'drains' as used in section 3812, General Code, is not synonymous or interchangeable with the term 'sewers' as used in the same section. Each has a common, ordinarily accepted meaning of its own and legislation by the council of a municipal corporation for the improvement of a street by paving, and providing for the construction of the necessary drains as an incident thereto, is not broad or comprehensive enough to clothe the city with jurisdiction to construct a sanitary sewer thereunder."

The distinction between that case and the case at bar is that in the Roebling Case an effort was made to construct a sanitary sewer under a resolution providing for the paving and draining of the street, and a distinction was made between a drain and a sewer. It is very clear that a drain and a sewer are not synonymous, a sewer being very much more comprehensive than a drain, and distinction is also to be made between a sanitary sewer and a storm sewer. In this same opinion the court said further:

"A drain is an incident to street building. No engineer would think of constructing a street without providing for the drainage of that street. It is an essential element of good workmanship and substantial construction, and it is highly important that drains be provided to prevent the accumulation of water upon the surface of the street and adjacent territory, for the purpose of preventing early decay and deterioration of the street. By reason of its construction a street may receive surface water, and frequently does, from territory outside of its own compass, from the terraces of abutting property and from the roofs of houses thereon.

"The word 'sewer,' on the other hand, when applied to city improvements, means a large, underground passage for fluid and feculent matter—refuse and filth necessarily present in populated centers—by means of which this matter is carried off. A sewer is employed for the convenience of the people, and its prime purpose is for the benefit of the health of the public."

In the case at bar, the storm sewer was constructed simply as an incident to the proper drainage of this street, and, while the court found that it did receive surface water from territory outside of the immediate abutting property, this sewer was for the sole purpose of taking care of surface water which would naturally flow over this street, and for the purpose of protecting and preserving the paving. No road or pavement can be properly constructed without providing for a drainage of the surface water. In road building this is usually taken care of by surface drainage, but this is not practical in paving in cities as a general rule,

and it is a necessary incident in most cases to arrange for the disposition of this surface water by storm sewers. In the Roebling Case, supra, the court did not hold that a construction of a sewer for the purpose of disposing of surface water from the street was not authorized. That the storm sewer was a necessary incident to this paving appears conclusively from the testimony. The witness Lowe testified, in substance, that this sewer was a necessary part of the construction of the paving of the street and was the life of the paving; that if the water got under the pavement it would ruin it. In regard to the drainage of territory except that immediately abutting on the pavement, the testimony is as follows:

"Q. Is there any other land drained than that in the improvement district by reason of the construction of the drains in district three and four? A. There might be a little bit, not very much. Q. Is that due to the fact that the natural lay of the land is such that it brings water down on to the paved street? A. The pavement that they petitioned for was some of the streets north and south and some of them east and west, and we do take into consideration the water that can come down over both districts and some of the paving, that is east and west, would have—the water would fall on the outside of the district and would run across it in coming through the natural course."

It is true that the testimony shows that the sewer has been bricked up, and has not been in use since its construction; but that fact does not determine that it was not a necessary incident for the proper protection and drainage of the pavement. Unless the city was without jurisdiction to make the improvement, the fact that the improvement is not being used for the purpose for which it was constructed would not render the proceedings void and invalidate the improvement contract and the paving bonds.

We think it clear from the evidence that the drainage provided in the instant case was only such as was necessary for the drainage of the water which came on to the streets improved in its natural flow, and was in no manner intended to provide a system of storm sewers. That being the case, we think that the expense of this drainage was a necessary incident to the paving and properly taxable against the abutting property owners.

It is contended that the proceedings are void because the storm sewer and paving were not acted upon separately and bids submitted upon each. We think this contention without foundation, because the resolution only covered one subject and that was

improvement of the street, and in improving the street the pavement would be laid and gutters constructed and sewer pipes laid for the purpose of disposing of the surface water from such streets. In the case of Roebling, supra, the court said:

"The city council through proper legislation may do any one or all of these things, and it is clear to us that it may do any one or all of such things in one set of proceedings, so that the contention made here, that the paving of the street and the laying of the water mains were illegally considered under one such set of proceedings is not well taken. The subject of the legislation is improvement, and the resolution of necessity contains only one subject."

In Board of Education v. Woodworth, 89 Okla. 192, 214 Pac. 1077, the question of voting bonds for the purchase of sites for school buildings and play grounds, and the erection of school buildings, was submitted to the voters, and the contention was made before this court that the election was invalid because two distinct propositions were submitted as a single proposition, that is the purchase of sites and the construction of buildings and the purchase of play grounds, and it was held only a single proposition was submitted.

It is further contended that the assessment is void because the proceedings show that at the time the bids were opened, a bid was accepted, but on the same evening a resolution was adopted rejecting all bids and authorizing the city clerk to re-advertise for bids on new plans and specifications; that thereafter this action of the board was rescinded and the former bid again accepted and work performed thereunder. It is the contention of the plaintiffs that the city council had no authority to let the contract after the same had once been rejected. In City of Springfield v. Weaver (Mo.) 37 S. W. 509, the court said:

"The council had the undoubted power at a subsequent meeting to reconsider and rescind the order rejecting the bid of Reily, and thereafter to accept his bid, and let the contract to him. It had acquired jurisdiction over the parties interested and the subject-matter. The bids were before it. The bid of Reily was within the estimate of the engineer. The acceptance or rejection of the bid and making the contract were mere matters of business detail intrusted to the council, and over which it had power to act in such a manner as it might consider to be for the best interest of the city."

In Ross v. Stackhouse (Ind.) 16 N. E. 501, the first paragraph of the syllabus is as follows:

"A city council, after properly advertising the letting of a contract for a street improvement, and receiving bids therefor, voted to reject all the bids which were made. It afterwards reconsidered its action, and accepted one of the bids without ordering a new advertisement, and the work was duly completed and accepted under s u c h contract. Held, on appeal by an abutter from an assessment upon his property for the improvement, that the contract thus entered into was valid."

In the case at bar, none of the preliminary proceedings were vacated, and the city council still retained jurisdiction to proceed with the improvements which had been ordered. Notices to contractors as provided by law had been given, and the action of the council in rejecting bids and thereafter rescinding its action in no manner affected the validity of the contract.

The judgment of the trial court is reversed, and cause remanded, with directions to enter judgment for the defendants.

JOHNSON, C. J., and KANE, KENNAMER, and MASON, JJ., concur. McNEILL. HARRISON, and NICHOLSON, JJ., dissent.