Thad A. DRIVER et al., Plaintiffs In Error,

v.

CITY OF TULSA et al., Defendants In Error.

No. 36536.

Supreme Court of Oklahoma.

Dec. 20, 1955.

Rehearing Denied Jan. 30, 1956.

Doerner, Rinehart & Stuart, Jack E. Campbell, Tulsa, for plaintiffs in error.

T. A. Landrith, Jr., City Atty., Edmund Lashley, Asst. City Atty., for city of Tulsa.

Carlson, Lupardus, Matthews, Holliman & Huffman, Tulsa, for Standard Paving Company.

WILLIAMS, Vice Chief Justice.

The City of Tulsa, a municipal corporation, through its certain officers, adopted a resolution for the purpose of creating Street Improvement District No. 1413, and providing for the improvement by grading, paving, guttering and draining of certain portions of designated streets in the area of the improvement district; said improvements to be paid for by assessments against property abutting the street improvements.

Pursuant to said resolution the city engineer prepared plans and specifications and estimate of costs for such improvements as were contemplated by the resolution, and which included the paving of the designated streets and therewith the construction of underground drainage lines, or what may be described as a storm sewer along the route of the said paving.

Standard Paving Company was awarded a contract to carry out the aforesaid plans and specifications, and in consideration of the payment of certain sums to be derived from the aforesaid property assessments.

Thad A. Driver and others, owners of property in the street improvement district filed suit to contest the validity of the entire proceedings had in relation to the said street improvement district.

The city and its officers, named as defendants, and the paving company, in plea of intervention, all filed answers to the plaintiffs' petition.

Trial resulted in judgment sustaining the proceedings had in relation to the said street improvement district, and the plaintiffs bring appeal.

Plaintiffs here argue that the trial court erred in holding that the city possessed power and authority to assess the cost of a storm sewer to the abutting properties along with and as a part of a street paving project.

The City of Tulsa has a charter form of government and the power of the city, through its officers, to determine the necessity for street improvement, and the nature of such improvements, and to make assessments against abutting property therefor, is governed and controlled by the provisions of its charter. The terms of the charter are a proper subject of judicial notice. 11 O.S.1951 § 560; City of Ardmore v. Excise Board, 155 Okl. 126, 8 P.2d 2.

The record herein reveals that the Board of Commissioners of the City of Tulsa adopted what is commonly known as a resolution of necessity whereby Street Improvement District No. 1413 was created. Such

district was created for the purpose of grading, curbing, guttering, draining and paving Thirty-Eighth Street for a distance of six blocks extending from Peoria Avenue on the west to Utica Avenue on the east, and St. Louis Avenue for a distance of one block extending from Thirty-Eighth Street on the north to Thirty-Ninth Street on the south. The total cost of such project was in the amount of $53,994.07, of which amount the sum of $14,144.24 represented drainage costs. Such costs were to be apportioned, levied and assessed against properties in the district liable therefor, in accordance with the applicable charter provisions of the city. It further appears that the drainage method proposed to be used in connection with such street improvements was the storm sewer method and that the $14,144.24 drainage cost above referred to was the cost of installing a storm sewer underneath the paving along Thirty-Eighth Street, together with the necessary manholes, manhole connections and drop inlets, when done in conjunction with the paving itself. It is the inclusion of this cost of storm sewer installation in the total amount to be assessed against the abutting properties that constitutes the basis of plaintiffs' objection to the proposed assessment.

Plaintiffs contend that by virtue of two provisions of the city's charter, storm sewers are regarded as public utilities and must be paid for by public funds and not by special assessments. The two sections relied on are Article II, Section 6(1), and Article VII, Section 2. Article II, Section 6(1), is in pertinent part as follows:

"The City of Tulsa shall have the * * * power to acquire, own, operate and maintain within or without the corporate limits of the City of Tulsa, real estate * * *; and for the location thereon of * * * storm sewers * * *; and in order to raise the means to carry out the same shall have the power to issue and sell bonds * * *."

Article VII, Section 2 of said charter provides:

"The Board of Commissioners shall have power, by ordinance, to provide for and construct a general sewer and drainage system, to be divided into public and private sewers and drains, and to be constructed, maintained and regulated in such manner and out of such material as the Board of Commissioners may prescribe. Sewers may be established as the Board of Commissioners may direct, and there may be extension of branches of sewers already constructed or entirely new throughout, as may be deemed expedient. The Board of Commissioners may, if necessary, levy a tax on all taxable property in the entire city, to pay for the construction and repairs of such public sewer tax; and shall be used solely for such purposes. * * *"

Plaintiffs further contend that Article IX, Section I of the charter, which relates to the creation of street improvement districts and improvements for which a special tax is to be levied against abutting property, does not expressly spell out or include storm sewers and that the city therefore has no authority to include the cost of a storm sewer in the assessments made under the authority of such section but must defray the cost of such storm sewer under the provisions of either Article II, Section 6(1), or Article VII, Section 2, both above quoted. Article IX, Section I of such charter is as follows:

"When the Board of Commissioners shall deem it necessary to grade, pave, macadamize, gutter drain or otherwise improve any street, avenue or alley or any part thereof, within the limits of the city, for which a special tax is to be levied, as herein provided, said board shall by resolution declare such work or improvement necessary to be done, which resolution shall be adopted by a majority vote of the board, and the passage of such resolution shall be conclusive of the public necessity thereof, and the benefits thereof, and no notice of such action by the board shall be requisite to its validity * * *."

Plaintiffs cite no authority to support their contention concerning the effect of the quoted provisions of the city's charter

and we have found none. On the other hand, we find that a somewhat similar question of interpretation was presented in the case of Oklahoma City v. Shields, 22 Okl. 265, 100 P. 559. That case arose under the state statutes and not under the city charter here in question, but the provisions of the two are somewhat similar. At the time of the decision in the Shields case, chapter 10, art. 1, Laws of 1907–08 provided:

"The mayor and council shall have power to levy a tax not exceeding five mills in any one year, upon all taxable property of said city, for the purpose of constructing storm sewers and outlets in connection with the construction of the improvements herein provided for."

Yet this court held that the cost of constructing the storm sewer drainage incident to the paving of the improvement districts could properly be charged against the abutting property owners under the statutory provision authorizing the paving instead of proceeding under the above section.

A similar question was again presented in the case of City of Sand Springs v. Hohl, 90 Okl. 124, 216 P. 138, which also involved the construction of state statutes rather than charter provisions. The particular statutes involved had been changed somewhat since the decision in Oklahoma City v. Shields, supra, but the statutory provisions involved were quite strikingly similar to the charter provisions here involved. In that case it was contended that a storm sewer could only be constructed under the general statute authorizing the construction of sewers by municipalities, Sections 462 to 471, inclusive, R.L.1910, 11 O.S.1951 §§ 271–280, and that the city had no authority to construct the storm sewer and assess the cost thereof against the abutting property owners under the provisions of the paving statute, chapter 29, art. 12, Comp.Stat.1921. This court rejected such contention and held that where storm sewer drainage was a necessary incident to the paving project, the cost thereof could be properly taxed against benefitted prop-

erties within the district the same as other costs incident to the improvements.

Plaintiffs do call attention to the case of Rupp v. City of Tulsa, 202 Okl. 442, 214 P.2d 913, 917, which they say involves the identical issue as is here involved. Plaintiffs state that such case was decided adversely to their contention but assert that the controlling section of the city's charter was misquoted to the court therein and that such misquotation led directly to an interpretation of the city's charter contrary to its true wording and meaning and that had the provision of the charter been correctly quoted to the court, the court would not have reached the conclusion it did, but would have reached the conclusion for which plaintiffs now contend. We do not agree with such assertions, however. The question here presented was not directly involved or decided in the Rupp case as is clearly shown by the following quotation from the opinion therein:

"The right of the City to provide drainage through the storm sewer in question as an incident of the paving project is not questioned. It is recognized that the properties of plaintiffs were benefitted thereby and were liable to assessment for a portion of the cost thereof."

While it does appear that a slight error was made in the Rupp opinion in quoting Section 1, Article IX of the charter of the City of Tulsa, in that a comma was inserted between the words "gutter" and "drain" in the first sentence thereof, whereas, as is shown by the correct quotation of the section hereinabove set out, no such comma appears in the charter, it does not appear that such error had or could have had any bearing on the conclusion reached in the case. A reading of the opinion in the Rupp case discloses that the charter provision in question was quoted in connection with the contention there made that the city had no power thereunder to create a paving district consisting of more than one way. We are unable to see how the erroneous insertion of the comma between the words "gutter" and "drain" in the quotation of

the charter provision could have any effect on the proper disposition of such question. We are of the opinion that so far as the question presented by the case at bar is concerned, the Rupp case merely reveals that the City of Tulsa followed the same procedure there with reference to assessing the cost of storm sewer drainage as an incident of the paving project as it seeks to do in the case at bar and that the abutting property owners involved in the Rupp case did not see fit to question the right of the city to so proceed.

We are of the opinion and hold that although authority exists by virtue of Article II, Section 6 and Article VII, Section 2, of the charter of the City of Tulsa, for the construction of storm sewers at public expense, this does not preclude the city from constructing storm sewers in connection with the paving of the streets where the construction thereof is a necessary incident to the proper paving and drainage of such street, and assessing the cost thereof against the abutting property owners under the provisions of Article IX of such charter.

Plaintiffs also suggest that the storm sewer installation in question was not a necessary incident to the proper paving and drainage of the streets involved. The only expert testimony presented in that regard was that of the city engineer, who testified that although there were other ways that the streets in question could be successfully drained, the proposed storm sewer method "is the most practical, the cheapest and best lay-out for drainage for this area."

We therefore conclude that the trial court's findings and judgment are not against the clear weight of the evidence and that the trial court's judgment is not erroneous as a matter of law. The judgment is therefore affirmed.

JOHNSON, C. J., and DAVISON, HALLEY, BLACKBIRD and HUNT, JJ., concur.

JACKSON, J., dissents.