## CITY of ARDMORE v. EXCISE BOARD of CARTER COUNTY.

No. 22893. Opinion Filed Jan. 26, 1932.

Rehearing Denied Feb. 16, 1932.

J. E. Williams, for plaintiff in error.

Marvin Shilling, Co. Atty., and Arthur Grunert, for defendant in error.

ANDREWS, J. This is an appeal from a judgment of the district court of Carter county denying the petition of the plaintiff in error for a writ of mandamus against the excise board of Carter county, wherein it was sought to require the excise board to approve an item in the financial estimate of the city of Ardmore, as follows: "Airport Lease, Five Thousand Dollars." The excise board struck the item from the estimate and refused to make an appropriation therefor. Hereinafter the parties will be referred to as they appeared in the trial court.

The city of Ardmore acts through a board of commissioners operating under a charter form of government, of which charter this court will take judicial notice under the provisions of section 4502, C. O. S. 1921.

That the financial estimate was properly executed, published, and certified to the excise board, as required by law, is admitted, and it is admitted that the estimate was within the statutory and constitutional limitations as to the rate of taxation.

The plaintiff contends that the appropriation asked for was for a legal purpose authorized by law, and that is denied by the defendant. By the provisions of section 4507, C. O. S. 1921, as amended by chapter 11, Session Laws 1929, and section 6, art. 18, of the Constitution of Oklahoma, the city of Ardmore, being a city of more than 2,000 inhabitants, is authorized to engage in the business of operating an airport and has the right and power to acquire, own, and maintain, within or without the corporate limits of such city, real estate for aviation airports. See Ruth v. Oklahoma City, 143 Okla. 62, 287 P. 406. There is nothing in the charter of the city of Ardmore to the contrary.

The defendant contends that the city of Ardmore has no authority to lease such public improvement for the reason that it is "possible for the city to float a bond issue and stay within the constitutional limitations." The agreed statement of facts shows that a $5,000 bond issue would not exceed the constitutional limitation as to the city of Ardmore. The determination of that question was for the local governing body of the city and not for the excise board.

The defendant contends and the trial court held that the item was not sufficiently itemized. That holding is contrary to law. The estimate as made conforms to the requirements of the statute. See Protest of Chicago, R. I. & P. Ry. Co., 146 Okla. 23, 294 P. 169. There is nothing in the legislative enactment that requires more detailed itemization of the item if such was possible.

It is contended by the defendant that proof was not offered by the plaintiff as to the location of the purported airport, the person or persons from whom the same was to be leased, the price to be paid, or any other evidence by which the court could determine for what purpose the appropriation was sought. It may be that no location had been agreed to by the local legislative body. Under the law, that body probably would have no authority to agree to any location until an appropriation for the purpose was made. The item in the estimate speaks for itself as to the amount to be paid. Complaint is made that there was no evidence that an improved airport could be leased by the city. That was a question for determination by the local governing body.

It is contended by the defendant that mandamus was not a proper remedy, and the case of Sheffield v. Fountain, 101 Okla. 168, 224 P. 339, is cited as authority therefor. The rule stated therein is correct, but it has no application herein. In Board of Education of the City of Guthrie v. Excise Board of Logan County, 86 Okla. 24, 206 P. 517, it was said:

"Where a writ of mandamus is sought to enforce the performance of a statutory duty, which is plain and definite, the refusal to perform such statutory duty is sufficient to authorize the issuance of the writ. Oklahoma Railway Co. v. Severns Paving Co., 67 Okla. 206, 170 P. 216, 10 A. L. R. 157; Stevens v. Miller, (Kan.) 43 P. 439; State ex rel. William H. Lord v. Board of Supervisors of Washington County, 11 Wis. 552."

That statement is in conformity with the provisions of section 446, C. O. S. 1921.

We are thus confronted with the question of whether or not it was the duty of the excise board of Carter county to approve the item of the estimate and to make an appropriation therefor.

The board of commissioners of the city of Ardmore is the legislative and governing body of that city. As such, it is its duty to make an estimate of the needs of the municipality for each ensuing fiscal year. Section 9695, C. O. S. 1921. That board determined

the necessity for the appropriation in question and made, published, and certified its estimate therefor. Did the excise board have the authority to strike the item from the estimate and to refuse to make the appropriation therefor? That is a question for determination by this court. If it had that authority, it is by reason of the provisions of section 9698, C. O. S. 1921.

It is elemental that a thing may not be done indirectly that cannot be done directly. Since the Legislature is prohibited by the provisions of section 20, art. 10, of the Constitution from imposing taxes for the purpose of any county, city, town, or other municipal corporation, it is prohibited from establishing a board or tribunal with authority to impose taxes for the purpose of any county, city, town, or other municipal corporation. It was so recognized by the makers of the Constitution in section 20, art. 10, supra, by the provision of that section that the Legislature is authorized, by general laws, to "confer on the proper authorities thereof, respectively, the power to assess and collect such taxes." The heading of the section, as shown in Williams' Ann. Constitution, as quoted in City of Collinsville v. Ward, 64 Okla. 30, 165 P. 1145, is "Local Taxation to be Levied and Collected by Local Authorities" and, as printed in Compiled Oklahoma Statutes 1921, "Local Authorities May Assess and Collect Taxes." There is no heading to the section in the Constitution as adopted. The section was construed in Thurston, Co. Treas., v. Caldwell, 40 Okla. 206, 137 P. 683, and the construction there given to it was reviewed and approved in City of Collinsville v. Ward, supra. In the latter case it was said:

"That the framers of the Constitution in writing said provision, and the people by adopting it, intended that it should be given effect and should have operation in some sphere, cannot be doubted. Other provisions of the Constitution indicate that the people recognized the right of the municipality in matters of purely local or municipal concern to levy taxes, as is shown by section 19, art. 9, which declares that every ordinance and resolution passed by any county, city, town, or municipal board or local legislative body levying a tax, shall specify distinctly the purpose for which said tax is levied, and by section 28, art. 10, requiring such municipality to levy sufficient additional revenue to create a sinking fund to be used for the purposes required by law. Gray's Lim. of Taxing Power and Public Indebtedness, sec. 677 (a), p. 335."

In Thurston, Co. Treas., v. Caldwell, supra, this court held:

"Section 20, art. 10, Williams' Ann. Const. Okla., which provides: 'The Legislature shall not impose taxes for the purpose of any county, city, town, or other municipal corporation, but may, by general laws, confer on the proper authorities thereof, respectively, the power to assess and collect such taxes,' applies to purely municipal affairs, and does not constitute a limitation upon the power of the supreme Legislature of the state to impose taxes for purposes which, although of a municipal character, the state has a sovereign interest in, such as taxation for police protection, for streets, highways, and bridges, for the purpose of establishing and maintaining a public school system, etc."—and thereby pointed out the distinction between taxes for purely municipal affairs and taxes for purposes in which, although of a municipal character, the state has a sovereign interest. That distinction was recognized in City of Collinsville v. Ward, supra, wherein it was held that the provisions of the charter of that city, regulating the method of levying and collecting taxes for purely municipal purposes, prevail over the general laws of the state in reference thereto in so far as the general laws are in conflict therewith and that the general revenue laws apply and govern in the levying and assessment of taxes of that character in which the state has a sovereign interest. It was therein pointed out that that distinction was necessary by reason of the provisions of section 20, art. 10, of the Constitution.

The distinction shown in the decision in Thurston, Co. Treas., v. Caldwell, supra, and City of Collinsville v. Ward, supra, between taxes for purely municipal affairs and taxes for purposes in which, although of municipal character, the state has a sovereign interest, is required by reason of the provisions of section 20, art. 10, of the Constitution, and they must be kept in mind in considering the issue before this court. That distinction was kept in mind in Bodine v. City of Oklahoma City, 79 Okla. 106, 187 P. 209, and is shown by the statement in the opinion with reference to the Thurston Case, in which the court said:

"Justice Kane, in speaking for the court, correctly interpreted the law in that case as applied to the issue therein raised, holding that section 20 was not a limitation on the Legislature to impose a tax in which the state has a sovereign interest. The principle of law therein laid down is not applicable to the issue in this case."

When that distinction is kept in mind the decision in Bodine v. Oklahoma City, supra, must be construed as applying to taxes of purely local or municipal concern, for, by the language of the decision, a tax in which the state has a sovereign interest was not an

issue therein. The issue therein was as to the power and authority of the excise board to revise and correct a city budget as to items in which the state did not have a sovereign interest, the city denying and the excise board asserting that right. It was therein held that the authority and power for the revision and correction of such a budget was with the mayor and city commissioners of the chartered city, and not with the county excise board. The decision was based on the right of a chartered city to impose necessary taxes for all matters of purely local or municipal concern. In City of Sapulpa v. Land, 101 Okla. 22, 223 P. 640, the Bodine Case was discussed, and with reference thereto it was said:

"It is conceded that in the Bodine Case the precise question in the case at bar was not involved. The only question involved in the case, supra, was whether or not the county excise board had authority to revise and correct the budget or estimate of the probable needs of the city for municipal purposes."

The decision in the Land Case was to the effect that delinquent taxes on real estate might be collected only by a sale of real estate by the county treasurer, under the provisions of sections 9730 to 9749, inclusive, C. O. S. 1921, and that a foreclosure of a tax lien therefor in the district court was unauthorized. That decision was followed and approved in Ryan, Co. Treas., v. Roach Drug Co., 113 Okla. 130, 239 P. 912. There is no conflict between those decisions and the decision in the Bodine Case. In City of Sapulpa v. Land, supra, in distinguishing the issue in that case from the issue in the Bodine Case, this court said:

"It is apparent that the matter of the budget for the needs of a city is purely a municipal matter so long as the cost of such budget is within the limitation of the law."

The budget therein referred to was evidently one of purely local or municipal concern.

From the decisions cited we are of the opinion and hold that cities have authority to assess taxes for matters of purely local or municipal concern and that their discretion therein is not subject to review by the excise board so long as they are within the limitations provided by the Legislature under the provisions of the Constitution.

We are next confronted with the question of the meaning and effect of section 9698, supra.

In St. Louis & S. F. Ry. Co. v. Caldwell, Co. Treas., 75 Okla. 153, 182 P. 688, this court quoted from 36 Cyc. 1106, as follows:

" 'The fundamental rule in construing statutes is to ascertain and give effect to the intention of the Legislature. This intention, however, must be the intention as expressed in the statute, and where the meaning of the language is plain, it must be given effect by the courts, or they would be assuming legislative authority. But where the language of the statute is of doubtful meaning, or where an adherence to the strict letter would lead to injustice, to absurdity, or to contradictory provisions, the duty devolves upon the court to ascertain the true meaning. * * *' "

There is an equally well known rule that legislative enactment should be given a construction consistent with constitutional provisions, if possible, and that where a legislative enactment is capable of two constructions, one of which would construe the act to be in violation of constitutional provisions, and the other to be in conformity with constitutional provisions, the act should be given that construction which will harmonize it with the constitutional provisions. Such a rule should be applied to the provisions of section 9698, supra. The system of which it is a part has been in successful operation in this state for many years and is a valuable aid in the assessment and collection of taxes for the counties, cities, towns, and other municipal corporations. We will, if possible, construe it to be in harmony with the provisions of the Constitution. Prior to the adoption thereof, the various taxpaying units assessed taxes independently of each other and the taxes as assessed were extended upon the tax roll. Confusion arose therefrom and it was deemed necessary that some agency be established for the supervision thereof and that the aggregate might be kept within the constitutional and statutory limitations. The board known as the excise board was created for that purpose.

By the provisions of section 9698, supra, the excise board "shall have power and authority to revise and correct any estimate certified to them. * * *" That authority is not in conflict with any constitutional provision. The correction of an estimate cannot be said to be the assessment of a tax within the meaning of section 20, art. 10, of the Constitution. It is nothing more than the word implies—"a correction," Webster's International Dictionary defines the word "revise" as follows: "To look at again for the detection of errors; to re-examine; to review; to look over with care for correction, as, to revise a writing; to revise a translation." If the Legislature had that meaning in mind when it used the word "revise," revision thereunder would not be the assessing of a tax within the meaning of section 20, art. 10, supra. Confusion was

caused by the use of the language stating the manner in which the revision and correction is to be made. The manner of revision and correction is therein stated to be "* * * by either striking items therefrom, increasing or decreasing items thereof, or adding items thereto. * * *" When that provision is examined in connection with the other provisions of the section, including that portion in which it is provided that when the excise board shall have "examined, revised, and adjusted the items of the respective items of the several municipalities, and shall have ascertained in separate items the needs of each, if the same shall be within the limits for current expenses as provided by law, they shall approve the said items and appropriate the respective amounts thereof for the purposes so found to be necessary," and other sections of the same act, the meaning is clear, and the meaning is clear only when the various provisions of the act (chapter 226, Session Laws 1917) are construed together and with reference to the constitutional provisions. Among those are section 2 (section 9695, supra) and section 4 (section 9697, C. O. S. 1921). Therein the Legislature construed "proper authorities," as used in section 20, art. 10, of the Constitution, to be "Each board of county commissioners, the mayor and council of each city or the officers exercising like power in any city having a charter form of government, the board of trustees of each incorporated town, the directors of each township and the board of education of each independent school district" and "the directors of each school district," and authorized them as the proper authorities thereof to make itemized statements of estimated needs and probable income from sources other than ad valorem taxation for current expenses for the current fiscal year for each. It required them to cause the same to be published in some newspaper or to be posted that the people of the various taxpaying units might be informed thereof. It required that said estimates, after publication, should be certified to the excise board of the county. It required each officer, board or commission of any county, city, township and school districts or town, and all employees charged with the management or control of any department or institution or either thereof, to make and file with the board or commission charged with the duty of reporting to the excise board, a report in writing showing, by classes, the earnings and cost of maintaining their respective offices or departments for the previous fiscal year, together with an itemized statement and estimate of the probable needs thereof for the

current or ensuing fiscal year. It required that those estimates and statements should also be transmitted to the excise board. Thereby the various officers were required to furnish the board or commission charged with the duty of reporting to the excise board, reports of earnings and cost of maintaining their respective offices and departments and estimates of the probable needs for the ensuing fiscal year and for the board or commission charged with the duty of reporting to the excise board to prepare estimates, and that all of the same be transmitted to the excise board. The excise board was then charged with the duty of revising and correcting the estimate certified to it by the board or commission charged with the duty of reporting to the excise board, and the means for doing so was provided by requiring the reports of officers to be also transmitted to the excise board. The method provided for the revision and correction has proved to be advisable. Increases in items are sometimes necessary to be made by the excise board. For instance, an estimate may not include a sufficient amount for expenses required by law to be paid and for which the local legislative body is required by law to provide. Such an estimate must be increased to conform to the law and such an increase may be made by the excise board for the purpose of causing the estimate to conform to the law. For the same reason it is sometimes necessary for the excise board to add items thereto. For instance, salaries fixed by law are required to be paid and, when omitted from the estimate, may be unlawfully added thereto by the excise board. It is sometimes necessary for the excise board to strike items therefrom. For instance, an item might be included in the estimate for an unauthorized purpose and it would be the duty of the excise board to strike the same as unauthorized by law. It is sometimes necessary for the excise board to decrease items thereof. For instance, the total estimated to be needed may not be available within the authorized rate of taxation, in which event it would be necessary that there be a decrease in the various items to bring the total within the amount authorized by the maximum rate of levy, or the estimate as made might be in an amount not necessary as a matter of law, as in the case of an estimate for the salary of a county attorney in excess of the salary fixed by law. The striking of items therefrom, increasing or decreasing items thereof, or adding items thereto, are the manner of executing the power and authority granted to the excise board to revise and correct the estimate certified to it. They carry with them no authority to substitute

the judgment of the excise board for the discretion of the local governing authority.

In Oklahoma News Co. v. Ryan, Co. Treas., 101 Okla. 151, 224 P. 969, it was held:

"Cities in this state receive authority to make tax levies by virtue of general laws enacted by the Legislature, and not otherwise, and in the absence of legislative authority, the city has no power to assess and collect a tax at all. The general laws of this state granting to cities the power to levy taxes is found in sections 9692, 9699, 9707 to 9712, inclusive, and provisions of charters of cities do not supersede these general laws. The amount of tax authorized to be levied by a municipality and the manner of levying the same, is a matter of general public interest and can be accomplished only by general laws and not by charter provisions."

That holding was repeated in Ryan, Co. Treas., v. Roach Drug Co., supra, wherein it was said:

"* * * And therefore the excise board of the county had exclusive jurisdiction to review the estimate submitted by the city for the purpose of determining whether the items submitted were within the limitation fixed by the statute and such other purposes as prescribed by the general laws of the state."

Since the Legislature, pursuant to the authority of section 20, art. 10, of the Constitution, has, by general laws. granted to cities the power to assess taxes, under the provisions of the Act of 1917 (sections 9692 to 9712, inclusive, C. O. S. 1921), that power exists without regard to whether or not there is a city charter, and that construction has been consistently followed by this court.

Under the record shown in Excise Board of Creek County v. State ex rel. Kissick, 105 Okla. 102, 231 P. 862, the excise board had refused to approve an estimate made by the board of county commissioners for the purpose of enabling the county commissioners to co-operate with the United States Department of Agriculture. The excise board contended that it was acting in its sound judicial discretion under the provisions of section 9698, supra, in so doing. The estimate was authorized by the provisions of section 3721, C. O. S. 1921. It was therein held that it was the duty of the excise board to approve the item and levy the necessary tax where it did not exceed the amount provided by law for that purpose. The court said:

"Clearly the general power conferred upon the excise board by the general statute to revise the various items of estimates does not extend to the estimate of the commissioners, made under the special statute, for co-operation with the Department of Agri-

culture in conducting farm demonstration work where the estimate is within the limitation allowed by law. In such case the acts of the excise board in approving the estimate and levying the tax are purely ministerial."

The basis of the holding was that the excise board was not authorized by the provisions of section 9698, supra, to refuse to make an appropriation required by law to be made. To the same effect is the decision in Webster v. Morris, Co. Treas., 129 Okla. 145, 264 P. 190. Therein the excise board sought to excuse itself for refusing to make an appropriation to pay for the publication of a resale tax notice on the ground that it had given "consideration to said estimate, and, acting within the discretion of said board, has disallowed the same." With reference thereto this court said:

"It is an obligation placed upon the county by the state, and the operation and discharge of this duty by the county is as necessary to the sustenance of the county as it is to the state; therefore, the only discretion that may be exercised by the county excise boards of the state, as it relates to the estimate for publishing notices of resale, is the amount that will be reasonably necessary for such purpose."

In that case the item was for a purpose in which the state had a sovereign interest, to wit, the collection of state, as well as municipal taxes, and the holding was that, though the item was one in which the state had a sovereign interest, the discretion of the excise board was limited to determining the amount that would be reasonably necessary for the purpose and that it had no discretion to determine whether or not it was reasonably necessary that a tax resale be held. In Re Tax Levies of City of Woodward, 143 Okla. 204, 288 P. 458, this court held:

"If the estimated needs of a municipality for the general fund expense of the municipality can be supplied within the statutory limitations, it is the duty of the excise board to make the appropriations therefor in the amounts estimated to be needed for that purpose, and the excise board is not authorized to make the appropriations in a lesser amount than that estimated to be needed if the amount estimated to be needed can be appropriated within the statutory limitations."

In Protest of Trimble, 151 Okla. 74, 300 P. 406, this court held:

"Where a municipality makes a financial statement and estimate of its needs for the ensuing fiscal year and certifies the same to the county excise board, and the estimate so made can be supplied within the statutory and constitutional limitations, it is the duty

of the excise board to make the appropriations therefor in the amounts estimated to be needed for those purposes and to fix rates of levy therefor. * * *"

In Protest of Chicago, R. I. & P. Ry. Co., 150 Okla. 167, 1 P. (2d) 383, it was held that the power and authority of the excise board to revise and correct an estimate certified to it did not include the power to make appropriations for current expense purposes aggregating an amount in excess of the aggregate amount estimated to be needed by the municipal officers for current expense purposes. In support of the holding it was said: "To give the act any other construction would be to defeat the act."

It cannot be said that it was ever intended that the excise board should have authority to refuse to make an appropriation for the salary of a county attorney in the amount fixed by law. To give the act that construction would be to give the created board the authority to defeat legislative provisions. There is no more reason for saying that the excise board could refuse to make an appropriation for the salary of a city officer fixed by an ordinance of a city, for compensation of all city officers is fixed by ordinance. Section 4515, C. O. S. 1921. The refusal to make an appropriation where the same could be made under the law for compensation of a member of the fire department, in effect, amounts to the discharging of the member thereof without cause, which is prohibited by section 4424, C. O. S. 1921, which provides:

"The chief and members of all paid fire departments appointed hereunder shall hold their respective positions unless removed for a good and sufficient cause."

Proceedings for the removal of a city officer are judicial in character rather than executive or administrative. Quick v. City of Fairview, 144 Okla. 231, 291 P. 95. The procedure for the removal of a marshal or policeman is provided by section 4519, C. O. S. 1921, and not by action of the excise board in refusing to approve an estimate for the compensation of those officers. Cities are authorized and empowered to purchase water works (section 4410, C. O. S. 1921), and the excise board is not authorized to prevent the same by refusing to approve a valid estimate for the amount needed therefor. Cities may purchase all necessary land for hospital purposes (section 4569, C. O. S. 1921), and the excise board is not authorized to prevent the same by refusing to approve a valid estimate for the amount needed therefor. Cities are authorized to establish and maintain public libraries and reading rooms (section 4575, C. O. S. 1921), and the excise board is not authorized to prevent the same by refusing

to approve a valid estimate for the amount needed therefor. Cities may contract for the sprinkling of streets (section 4581, C. O. S. 1921), and the excise board is not authorized to prevent the same by refusing to approve a valid estimate for the amount needed therefor. Cities are authorized to establish and change the grade of any street and to permanently improve the same (section 4583, C. O. S. 1921) and to pay the cost of the improvement on all intersections from its current expense fund (section 4622, C. O. S. 1921), and the excise board is not authorized to prevent the same by refusing to approve a valid estimate for the amount needed therefor. We consider it unnecessary to cite additional instances. If the authority for the expenditure estimated to be needed exists, the discretion as to whether or not it should be made is with the local governing body and that discretion is not subject to the discretion of the excise board. If, as contended, the provisions of section 9698, supra, authorize the excise board to strike from an estimate an item intended for a purely local or municipal purpose, then authority is granted thereby to add an item for a purely local or municipal purpose. The authority to add is as great as the authority to strike. If, in the instant case, the excise board is authorized to strike the estimate for leasing an airport, the excise board has the authority to add an item for the leasing of an airport and to make an appropriation therefor. If the excise board has the authority to strike an item for compensation of a city employee, it has the authority to add an item for compensation of a city employee, although the city has not provided for the employment of such an employee. The authority to determine the necessity for expenditures of purely local or municipal concern is in the governing body of the municipality subject to the rights of the people under the referendum laws, and it is not subject to the discretion of the excise board. The excise board is given certain authority, but that authority does not include the power to make appropriations for purely local or municipal purposes for which no estimate has been made by the local governing body, except where it is necessary that an appropriation be made for expenditures required by law to be made, and it does not have the authority to refuse to make appropriations of purely local or municipal concern when they are authorized by law and when they have been estimated by the local governing body to be needed, except where the total estimated needs aggregate an amount in excess of the amount that can be produced under the authorized rate of tax levy.

To give the act any other construction would be to permit the Legislature to do indirectly, through an excise board created by it, what it is prohibited from doing directly by the provisions of section 20, art. 10, of the Constitution. The excise board does not constitute "the proper authorities" of the taxpaying unit. It is no part of the taxpaying unit. In School Dist. No. 85 v. School Dist. No. 71, 135 Okla. 270, 276 P. 186, with reference to the power of the excise board to arbitrarily create an item in the estimate of a school district for transfer fees, it was said:

"The act under consideration provides for an imposition of a tax by the Legislature upon a school district through an adopted agent, the excise board, which is not the 'proper authority thereof' to make the estimate, but only the readjusting and approving board"

—and with reference to the transfer statute, it was said:

"The statute does not approach the dignity of a general law, and even though it be considered such, the 'power to assess' is not conferred upon 'the proper authorities,' for it cannot be maintained that the excise board has power to assess in the first instance, but only power to adjust and approve. The excise board is not 'thereof,' within the meaning of article 10, sec. 20, supra, with reference to municipal corporations, which, in this instance, is the school district."

Should we give the act the construction contended for, we would be required to hold that the Legislature intended to take from the local governing body the right to determine what is necessary for the fiscal needs of a taxpaying unit for its municipal affairs under the restrictions imposed by the Legislature, and to place that power in the excise board, no member of which is required to live within the taxpaying unit or to be a property owner or taxpayer therein. This we cannot do without disregarding the provisions of section 20, art. 10, of the Constitution.

To give the act the construction sought to be given to it would be to deprive every municipality of this state and the people thereof, acting through their duly elected officers, of the authority to determine for themselves, within the constitutional and statutory limitations, the amount of money to be raised and expended for the carrying on of local affairs. The people might be interested in having a well-lighted city, and the valuation of the property within the municipality might be sufficient to authorize the local legislative body to provide for a well-lighted city, under the authority of section 4568, C. O. S. 1921, but the excise board could deny them that right by striking from their estimate the item providing for the lighting of the city. The people of a city might be favorable to the operation of a municipal light plant. The excise board might be of the opinion that it would be advisable that the city discontinue the operation of the light plant and, by the striking from the estimate the item for the operation of the light plant, might defeat that right of the citizenship. The people of a city might be in favor of the leasing of an airport for municipal purposes. The excise board might be of the opinion that such an expenditure of money was not required for the needs of the municipality and thereby defeat the right of the people to conduct the local government in the manner they see fit with the funds paid by them through the form of taxation.

In Smartt, Sheriff, v. Board of County Commissioners, 67 Okla. 141, 169 P. 1101, an issue was presented as to the legality of a claim against the county for the feeding of prisoners in the county jail where the revenue provided for that purpose for the fiscal year had been exhausted prior to the accrual of the claim in issue therein. In discussing the subject of the liability of the county on a claim for services rendered by the sheriff in the discharge of a duty which "he could neglect only at grave peril to himself" and for the neglect of which he would be subject to imprisonment, this court said:

"There has been much controversy among publicists and thinkers and much conflict in the decisions of the courts as to the power and necessary limitations upon the powers delegated to the different departments and arms of the state government, but it is conceded by all that certain necessary fundamental functions must always be actively exercised in order to preserve the existence of the state and secure to the people the rights guaranteed to them, among which are the right to life, liberty, the possession of property, and the pursuit of happiness, and should the state become so impotent as to be unable to discharge these functions, there would result a failure of the purposes for which government was established. The surest way to bring about this result is to construe the Constitution in such a way as to place it in the power of one set of officials to deprive another of the means necessary for the performance of the duties imposed upon that other. If we give the Constitution such construction the enforcement of laws for the regulation and protection of the public peace and safety in any county might, in its ultimate analysis, depend upon the whim and caprice of certain local officials who might, by failing and refusing to make proper provision therefor, render it impossible to secure an enforcement of such laws

by the officers charged with the duty of so doing."

We quote from McQuillin on Municipal Corporations, section 246, as follows:

"The right of local self-government, as an undoubted right of the people, is regarded as an inseparable incident to our republican form of government, and, therefore, all our Constitutions assume its continuance. As expressed in substance by Judge Cooley, all 'delegations of powers which they make, and the express and implied restraints which they impose' upon the several departments of government are to be always construed in the light of all recognized pre-existing rights and privileges of the people, either in their individual or aggregate capacity as a local community.

"The Legislature cannot take away from the people of a town or city rights and privileges which they possessed as citizens of the state before the incorporation unless such rights have been expressly surrendered by organic provisions. As heretofore pointed out, the principal object of incorporation is to enable them to supply local needs and conveniences, or, additional rights and powers are granted to enable them better to govern themselves in all matters of local concern, and not to take away any rights or privileges they possessed before such grant was made."

There has been no express surrender of the right of local self-government by the people and that inseparable incident to our republican form of government may be surrendered only by the people themselves. While they delegated many rights, by the provisions of section 20, art. 10, of the Constitution, they specifically provided that the Legislature shall not impose taxes for the purpose of any county, city, town, or other municipal corporation. They delegated to the Legislature, in that respect, the power by general laws to confer upon the proper authorities of the various municipalities the power to assess and collect such taxes. It was never dreamed at that time that an attempt would be made to deprive the citizenship of a municipality of the power of local self-government in its municipal affairs or to take away from it rights and privileges possessed before the Constitution was adopted and reserved therein.

We quote from State ex rel. Smyth v. Moores, 76 N. W. 175, wherein the Supreme Court of Nebraska held:

"The right of local self-government in cities and towns (i. e., the power of the citizens thereof to govern themselves, as to matters purely local in their nature, through officers of their own selection) existed in this state at the time the present Constitution was framed, and was not surrendered upon the adoption of that instrument, but is vested in the people of the respective municipalities, and the Legislature is powerless to take it away."

Therein was quoted from Rathbone v. Wirth, 40 N. Y. Supp. 535, as follows:

"The principle I refer to is the principle of local self-government. * * * Local self-government is the school which fits people for self-government. Local self-government is the result, and also the most efficient preserver, of civil liberty. * * * The principle is one that runs through our entire system of government, from the road and school district up to the federal government. * * *"

The Supreme Court of Iowa, in State ex rel. White v. Barker, 89 N. W. 204, said:

"The argument is that the intention to preserve and perpetuate the ancient right of local self-government, which the law recognizes as of common-law origin, and having no less than common-law franchises, is apparent throughout the scope of most American Constitutions. Some of the judges even go so far as to say 'that, local self-government having always been a part of the English and American system, we shall look for its recognition in any such instrument (Constitution); and, if not expressly recognized, it is still to be understood ·that all these instruments are framed with its present existence and anticipated continuance in view'; 'that back of all Constitutions are certain usages and maxims that have sprung from the habits of life, mode of thought, methods of trying facts, and mutual responsibilities in neighborhood interests; precepts that have come from revolutions which overturned tyrannies; sentiments of manly independence and self-control, which impelled our ancestors to summon the local community to redress local evils, instead of relying upon king or Legislature at a distance to do so; that form of living spirit of the lifeless skeleton known as the Constitution; that gives it force and attraction, and that distinguishes it from the numberless so-called Constitutions of Europe; and that this so-called living spirit should supply the interpretation of the words of the written chapter. * * *' "

It is said that the inclusion in section 3 of the act (section 9696, C. O. S. 1921) of the provision that the excise board shall have no authority to reduce the estimate of a school district, by implication, is a grant of authority to the excise board to reduce the estimates of other taxpaying units. We do not agree with that contention. No confusion can arise therefrom when the distinction made in Thurston, Co. Treas., v. Caldwell, supra, is kept in mind. Upon the rule stated therein and consistently followed since that time, the maintaining of a public school system is a matter in which the state has a sovereign interest. It is not a matter

of purely local or municipal concern. Atchison, T. & S. F. Ry. Co. v. State, 28 Okla. 94, 113 P. 921. In the absence of the prohibition contained in section 9696, supra, the excise board as a state agency would have supervision over estimates for school district purposes and, under the provisions of section 9698, supra, would have the authority to reduce the estimate therefor. The prohibition was included in section 9696, supra, to prevent the excise board from exercising the authority granted to it by section 9698, supra, to reduce estimates involving matters in which the state has a sovereign interest and there is nothing in section 9696, supra, which even by inference authorizes the excise board to reduce estimates for matters of purely local or municipal concern, except as hereinbefore stated.

As construed herein, the 1917 act is a valid legislative enactment whereby the board of county commissioners, mayor and council of each city, or the officers exercising like power in any city having a charter form of government, the board of trustees of each incorporated town, the directors in each township, the board of education of each independent school district, the directors of each school district and the people when voting at an authorized election are the proper authorities of those taxpaying units upon whom has been conferred the power to assess taxes in matters of purely local or municipal concern under the legislative and constitutional limitation as to rate of taxes, and they are vested with the authority to assess taxes for those purposes subject to the right of the excise board to revise and correct the estimates so made, as hereinbefore stated.

In the case at bar it appears that the plaintiff has a clear legal right to the action demanded. The estimate was authorized by law; it was for a purely local or municipal purpose; it was within the constitutional and statutory limitations; it was made by the governing body of the city of Ardmore; and it was the duty of the excise board to approve the same and to make an appropriation therefor.

The cause is remanded to the district court of Carter county, with directions to issue a writ in conformity with the prayer of the plaintiff.

RILEY, HEFNER, CULLISON, SWINDALL, and McNEILL, JJ., concur. LESTER, C. J., CLARK, V. C. J., and KORNEGAY, J., dissent.

LESTER, C. J. (dissenting). I dissent from the conclusion reached in this case. The statute relating to the authority of the excise board is to be found in section 9698, C. O. S. 1921:

"The said board shall have power and authority to revise and correct any estimate certified to them by either striking items therefrom, increasing or decreasing items thereof, or adding items thereto, when in its opinion the needs of the municipality shall require. All revisions and corrections shall be as to specific items of the estimate and in no event shall any item or items of the estimate for current expense purposes be increased, or any item added thereto, until such proposed increase or additional item shall have been advertised and published by the excise board in some newspaper of general circulation in the county, in one issue, if published in a weekly paper, and two consecutive issues if published in a daily paper. The cost of any such publication shall be paid by the municipality. When the excise board shall have examined, revised, and adjusted the items of the respective estimates of the several municipalities, and shall have ascertained in separate items the needs of each, if the same shall be within the limits for current expenses as provided by law, they shall approve the said items and appropriate the respective amounts thereof for the purposes so found to be necessary."

Section 14 of article 10 of the Constitution of the state of Oklahoma provides in part:

"Taxes shall be levied and collected by general laws, and for public purposes only. * * *"

The petitioner below complains that the excise board was not within its jurisdiction in striking from the city budget the sum of $5,000 for the purpose of leasing a municipal airport for the city of Ardmore. In my judgment the excise board was clearly within its rights in striking said item from the estimated needs prepared by the city of Ardmore. The excise board has the right under the statute to exercise its sound discretion in striking items from the budget prepared by counties, cities, and towns deemed by said board to be unnecessary to the public needs of a municipality. However, I also believe that if the excise boards act capriciously and arbitrarily their acts are then subject to review. The prodigal spending of the taxpayers' money for unnecessary governmental frills has brought distress and disaster to the taxpaying public and there should be a check against public officials who give no heed to the burdens that they pass upon the taxpayers by incurring unnecessary obligations.

Note.—See under (3) 18 R. C. L. 303. (8) annotation in 6 L. R. A. 803; 25 R. C. L. 88, 89.