CITY OF TULSA, Oklahoma, a municipal corporation, Appellant, Counter–Appellee,

v.

PUBLIC EMPLOYEES RELATIONS BOARD, State of Oklahoma, Appellee, Counter–Appellee,

and

Fraternal Order of Police, Tulsa Lodge 93 and the International Association of Fire Fighters, Tulsa Local 176, AFL–CIO, Appellee, Counter–Appellant.

No. 68858.

Supreme Court of Oklahoma.

Oct. 23, 1990.

As Corrected Nov. 2, 1990.

Rehearing Denied Jan. 26, 1993.

Neal E. McNeill, Patrick T. Boulden, City of Tulsa, Office of City Atty., Tulsa, for appellant, counter-appellee.

Chapel, Wilkinson, Riggs, & Abney, Richard A. Mildren, Donald M. Bingham, Oklahoma City, for appellees, counter-appellants.

Ned Bastow, Asst. Atty. Gen., Oklahoma City, for appellee.

Edward Moler, City of Nichols Hills, Diane Pedicord, Sue Ann Nicely, Lynn Paul Mattson, Oklahoma Mun. League, Oklahoma City, for amicus curiae, Okl. Mun. League and the City of Nichols Hills.

James R. Moore, William C. Isbell, Horning, Johnson, Grove, Moore & Hulett, Oklahoma City, for amicus curiae, Professional Fire Fighters of Okl. and Okl. State Lodge Fraternal Order of Police.

Stephen L. Andrew, D. Kevin Ikenberry, McCormick, Andrew & Clark, Tulsa, for amicus curiae, The City of Sapulpa, Okl.

SUMMERS, Justice:

Two questions of serious concern to municipalities and their employees are presented: (1) Is a chartered, "home rule" city obligated to bargain in good faith under the state Fire & Police Arbitration Act as to a wage provision contained in an expired collective bargaining agreement? (2) Is such a city obligated to continue paying its employees under a wage provision in an expired collective bargaining agreement until a new agreement is reached? Our answer to the first question is "Yes". Our answer to the second is "No", if the City's obligation to continue such payments would constitute a charge against municipal funds beyond the fiscal year covered by the expired agreement. Okla.Const. Art. 10, § 26.

The City of Tulsa, a municipal corporation chartered under the laws of the state, entered into separate collective bargaining agreements with the International Association of Fire Fighters, Local 176, and the Fraternal Order of Police, Lodge 93, designated bargaining agents for all Tulsa fire fighters and police officers. Both agreements, executed on July 1, 1984, provided for Satisfactory Performance Increases (SPIs), the term used for merit increases in compensation over and above ordinary wages provided to those who qualified on their hiring date anniversary. The agreements also provided for a formal grievance procedure, including as the final step, mandatory and binding third-party arbitration.[1]

From July 1, 1984, to June 30, 1986, the City paid the increases without conflict. Negotiation for a new contract commenced, but ended abruptly when on July 8, 1986 the City informed the Union that no SPIs would be paid for the fiscal year beginning July 1, 1986. Upon receiving notice of the City's intentions, the Unions filed grievances, alleging violations of the collective bargaining agreements. The City initially agreed to process the complaints as grievances, but thereafter refused to continue to participate in the grievance procedure, particularly refusing to submit the matter as grievances to binding arbitration.

## RULING OF THE PUBLIC EMPLOYEES RELATIONS BOARD

The Public Employees Relation Board (Board) held a hearing on the Unions' complaint. It issued findings of fact and conclusions of law along with an opinion and a Cease and Desist Order as follows:

The City of Tulsa is hereby ordered, pursuant to 11 O.S.Supp.1985, § 51–104b(C) and consonant with the Findings of Fact, Conclusions of Law, and Opinion entered herein, to cease and desist from:

1. Refusing to negotiate collectively in good faith with Local 176 and Lodge 93

---

1. Although the collective bargaining agreement provided for mandatory and binding "grievance" arbitration, the FPAA provides for nonbinding arbitration in the process of bargaining and negotiating for such an agreement. Once a meeting for collective bargaining purposes has been requested by the Union, under the FPAA the municipality is required to meet and confer in good faith. 11 O.S.1985 Supp. § 51–105. If no agreement is reached within thirty days, the matter shall be submitted to arbitration upon the request of either party. 11 O.S.1981 § 51–106. Once submitted, a panel of three arbitrators must hold a hearing and issue an opinion. The municipal authorities are not required to adopt the arbitrators' opinion. 11 O.S.1981 § 51–108. This process is referred to as "interest" or "impasse" arbitration. *See* Edwards, Clark and Craver, *Labor Relations Law in the Public Section: Cases and Materials,* 633 (1985).

concerning the terms and conditions of employment of the firefighters and police officers in the respective bargaining units.

2. Unilaterally altering, or threatening to unilaterally alter, any and all terms and conditions of employment of its firefighters and police officers during the course of collective negotiations with Local 176 and Lodge 93;

3. Refusing to discuss grievances in good faith, including the refusal to participate in mandatory grievance arbitration.

The Board, relying mainly on federal law, held that the City committed unfair labor practices, as defined by 11 O.S.1981, § 51–102(6a)(1) and (5), § 51–102(5), and § 51–111.[2] The City then appealed this ruling to the district court which, for the most part, affirmed the Board's holding. From this, the City appealed to this Court. *Amicus* briefs have been received from the Oklahoma Municipal League, the City of Nichols Hills, the City of Sapulpa, the Professional Firefighters of Oklahoma and the Oklahoma State Lodge Fraternal Order of Police.

In making this ruling, the Board purported to base its decision on theories and statutes other than the "Evergreen" statute, 11 O.S.Supp.1988, § 51–105, which would appear to extend an expired contract until a new agreement is reached. Apparently the Board wished to avoid the question of the clause's constitutionality. Instead, the Board adopted the "dynamic status quo" principle, a concept which imposes upon the employer the duty to abide by the terms of the expired contract until a new one is agreed upon. *See Reed Seismic Co. v. NLRB*, 440 F.2d 598, 601 (5th Cir.1971). The Board, citing authority from other jurisdictions, held that the duty to bargain in good faith carried with it the duty of payment of automatic merit increases during the interim between the expiration of the collective bargaining agreement and pending the negotiation of a new agreement.

On appeal the District Court substantially upheld the ruling of the Board, specifically stating that a resolution of the constitutionality of the "Evergreen" clause was unnecessary. The court also pointed out that the Board was without authority to mandate back pay, but may order that conduct occurring from the time of the order be halted. The court agreed that unfair labor practices were committed under Sections 51–102(5), (6a)(1) and (6a)(5) and Section 51–111.

### THE HOME RULE DOCTRINE: OKLA. CONST. ART. 18, § 3 AND THE FPAA

■ Arguing that the Board erred in its ruling, the City of Tulsa first relies on the

---

2. Section 51–102. Definitions

5. "Collective bargaining" shall mean the performance of the mutual obligation of the municipal employer or his designated representatives and the representative of the employees to meet at reasonable times, including meetings appropriately related to the budgetmaking process; to confer in good faith with respect to wages, hours and other conditions of employment, or the negotiation of an agreement, or any question arising thereunder; and to execute a written contract incorporating any agreement reached if requested by either party. Such obligation shall not, however, compel either party to agree to a proposal or require the making of a concession.

6. "Unfair Labor Practices" shall include:

6a. Action by corporation authorities;

(1) interfering with, restraining, intimidating or coercing employees in the exercise of the rights guaranteed them by this article;

(5) refusing to bargain collectively or discuss grievances in good faith with the designated bargaining agent with respect to any issue coming within the purview of this article.

The pertinent portion of § 51–111 reads as follows:

... Every such agreement shall contain a clause establishing mediation and fact-finding procedures for the immediate and speedy resolution and determination of any dispute which may arise involving the interpretation or application of any of the provisions of such agreement or the actions of any of the parties thereunder. In the absence of such negotiated procedure such dispute may be submitted to arbitration in accordance with the provisions of Sections 51–107 through 51–110 of this title, except that the arbitration board shall be convened within ten (10) days after demand therefor by the bargaining agent upon the corporate authority or authorities. In such case the arbitration board's determination shall be final.

"home rule" doctrine, which implicates Art. 18, § 3 of the Oklahoma Constitution. The City argues that the decision of the Board is contrary to the home rule doctrine in that it intrudes on the City's right to make and implement decisions regarding the persons employed by the City.

Art. 18, § 3 provides the method by which a city may frame a charter for its own government, and states that once the charter is voted on by the people and approved by the Governor, the charter "become[s] the organic law of such city and supercede[s] any existing charter and all amendments thereof and all ordinances inconsistent with it." This constitutional provision vests municipalities with the freedom to frame their own charters and exercise a considerable degree of autonomy, according to Merrill, *Constitutional Home Rule for Cities Oklahoma Version*, 5 Okla.L.R. 139, (1952) (hereinafter cited as *Constitutional Home Rule*).

Within the limitations prescribed by the Constitution, it was clearly the intent of the framers ... to delegate local self-government to cities under a charter form of government in a larger measure and to a greater extent than is accorded cities existing under general law. *Id.* at 143.

In explaining the breadth of this provision, we have held that a city's charter is analogous to a constitution, and as such, supercedes the laws of the state regarding "merely municipal affairs." *Lackey v. State*, 29 Okl. 255, 116 P. 913 (1911). *See also City of Ponca City v. Edwards*, 460 P.2d 418, 421 (Okla.1969). "[T]he line between 'general matters of the state and its government' and 'merely municipal affairs' is the judicially accepted boundary between the domain in which the legislature is supreme and that in which the cities may insist upon independence." *Constitutional Home Rule*, at 159. The determinative question is whether the issue involves a matter that is purely municipal, or whether there is a wider public interest. *City of Wewoka v. Rodman*, 172 Okl. 630, 46 P.2d 334, 335 (1935); *see also City of Ponca City*, 460 P.2d at 421.

Here, we are faced with two different concerns to the employees: (1) their rights provided under 11 O.S.1981, § 51–101 et seq., (the Fire and Police Arbitration Act), and (2) their rights, if any, to continue to receive SPI wage increases. The rights provided in the Arbitration Act have previously been defined by this Court as matters of statewide concern. *Oliver v. City of Tulsa*, 654 P.2d 607, 609 (Okla.1982); *Midwest City v. Cravens*, 532 P.2d 829, 834 (Okla.1975). As we stated in *Cravens*, the Act provides for a collective voice by which firefighters and policemen may speak to their employer:

The Legislature has determined that it is a matter of state-wide concern that the permanent members of any paid fire department or police department, be accorded the privilege of communication with their respective employers with a collective voice. In our opinion, the privilege of communicating with their respective employers with a collective voice involves a matter of state-wide concern and the Act authorizing them to speak through a collective voice supercedes any charter provisions to the contrary. *Id.* at 834.

We went on to declare that because collective bargaining under the Act is a matter of statewide, rather than purely municipal, concern, Art. 18, § 3 is not offended by the statutory requirement of collective bargaining. We affirmed that conclusion in *Stone v. Johnson*, 690 P.2d 459 (Okla.1984) wherein we said:

"The imposition of the highest standard of good faith on the part of the representatives of the municipal employer is consistent with the purposes of the Firefighters and Policemen Arbitration Law.... This strong policy of requiring absolute good faith in bargaining is necessary to counter-balance the absence of the right to strike and the absence of the availability of binding arbitration.

The duty to bargain in good faith is a mandatory duty."

We continue to adhere to this position today, and find it to be dispositive of the first question presented. In its finding of

facts the Public Employees Relations Board found that the City of Tulsa declined to bargain to impasse with the policemen, and although ultimately reaching impasse with the firemen, declined to participate in the statutory impasse procedure set out in §§ 51–106 through 51–110. The City has not challenged these findings on appeal. That part of the Cease and Desist Order pronounced by the Board and sustained by the trial court directing the City to negotiate collectively with the Unions concerning the terms and conditions of employment is affirmed insofar as it pertains to bargaining to and through impasse and non-binding arbitration as required by 11 O.S.1981, §§ 51–106—51–111.

### THE "EVERGREEN" STATUTE, THE "DYNAMIC STATUS QUO" THEORY, AND ART. 10, § 26

The Unions contend that the City was required to continue to pay the Satisfactory Performance Increases after expiration of the agreement because 11 O.S.Supp.1985, § 51–105, referred to by the parties as the "Evergreen" clause, perpetuated the contract until a new agreement was reached. Section 51–105 states in pertinent part that "... until a new agreement is reached, the currently existing written agreement shall not expire and shall continue in full force and effect." The City argues that the "Evergreen" clause does not alter the present contract for two reasons: (1) the statute is not applicable because it was enacted after the parties had entered into the collective bargaining agreement, and (2) the statute is unconstitutional as it violates Art. 10, §§ 20 and 26 of the Oklahoma Constitution. Because we agree with the City's first argument, we do not address the constitutionality of the "Evergreen" clause.

The parties entered into the collective bargaining agreements on August 1, 1984, and the contract, by its own terms, had retroactive effect to July 1, 1984. The agreement was to be effective from July 1, 1984 to June 30, 1985. The portion of the contract which became effective on July 1, 1985 was subject to appropriations in accordance with Section 26. If the appropriations were not made, that portion of the contract was null and void. The second portion of the contract was thus ratified effective July 1, 1985, prior to the date that § 51–105 took effect. The "Evergreen" statute was enacted by the legislature in 1985 and did not become effective until October 17, 1985. The operative statutes are those which were in effect at the time the contract was executed, and it is those statutes which determine the force and effect of the contract. *McDermott v. Bennett*, 395 P.2d 566, 570 (Okla.1964). *See also Dickason v. Dickason*, 607 P.2d 674, 676–77 (Okla.1980); *Sinclair Oil & Gas Co. v. Bishop*, 441 P.2d 436, 443 (Okla.1968). The statute in effect at the time the contract was executed (and later ratified) stated that the contract would be extended for a one-year period unless written notice of request for bargaining is given by either party. *See* 11 O.S.1981, § 51–105. The Unions gave written notice of their intent to negotiate new contracts, thereby precluding the contracts from extending into another year.

As such, we must agree with the City that their contractual obligation to pay SPIs was not extended by reason of the "Evergreen" statute. The collective bargaining agreement expired on its own terms, and cannot be extended under legislation which was not in effect at the time of the contract's execution or subsequent ratification.

The Board and the District Court decided this case by extending the terms of the expired collective bargaining agreement by means of a legal concept known as the "dynamic status quo." The City argues the "dynamic status quo" theory is inconsistent with the Oklahoma Constitution, Art. 10, §§ 20 and 26. The theory originated in the federal courts, and has been adopted by judicial decisions in several states. *See NLRB v. Katz*, 369 U.S. 736, 743, 744, 82 S.Ct. 1107, 1111, 1112, 8 L.Ed.2d 230 (1962); *Indiana Educ. Emplmt. v. Mill Creek Teachers*, 456 N.E.2d 709, 711 (Ind.1983); *In re Appeal of Cumberland Valley School Dist.*, 483 Pa. 134, 394 A.2d 946, 950 (1978). This theory

would prohibit unilateral changes made by the employer during negotiations for a new collective bargaining agreement:

> ... [T]he following is the generally accepted legal definition: 'STATUS QUO: The existing state of things at any given date ... the last actual, peaceable, uncontested status which preceded the pending controversy.'

In this case, it is apparent that the ... salary increases ... were part of the last uncontested contract of 1977–78. In order to maintain the status quo of that contract, the school board was required to maintain the status quo both as to the salary schedule and the increments which were a part of that schedule....

Maintenance of the status quo after expiration of a contract and during negotiations for a new contract is important because it serves to continue the balance in the bargaining power of the parties as well as provide the flexibility necessary to reach agreement in the gaive and take inherent in the collective bargaining process. *Indiana Educ. Emplmt.*, 456 N.E.2d at 712.

Essentially the "dynamic status quo" theory keeps alive the terms of an expired contract while negotiations are ongoing in order to avoid the situation wherein the employer uses the earlier granted but now expired salary increases as a bargaining tool. It is the judicially created counterpart to legislation such as the "Evergreen" clause found in Section 51–105. Both accomplish the same purpose of extending the expired contract until a new agreement is reached.

The power of a municipality to levy taxes is given in the Oklahoma Constitution, Art. 10, § 20:

> § 20. Taxes for county, city, town; or municipal purposes.
> The Legislature shall not impose taxes for the purpose of any county, city, town or other municipal corporation, but may, by general laws, confer on the proper authorities thereof, respectively, the power to assess and collect such taxes.

Art. 10, § 20 has been interpreted by this Court to grant to municipalities the power to tax in matters of local concern. *City of Ardmore v. Excise Bd. of Carter County*, 155 Okl. 126, 8 P.2d 2, 5 (1932). Section 20 does not limit the power of the legislature to levy taxes in matters of sovereign interest. *Id. See also Pawnee County Excise Bd. v. Kurn*, 187 Okl. 110, 101 P.2d 614, 617 (1940). This section, fundamental to the "home rule" doctrine, allows the municipality to determine how these funds should be spent as long as the expenditure remains within statutory and constitutional boundaries. *See City of Ardmore*, 8 P.2d at 11.

One of the limitations placed on this power is found in Art. 10, § 26:

> § 26 Indebtedness of political subdivisions—Assent of voters—Limitation of amount—Annual tax
> Except as herein otherwise provided, no county, city, town, township, school district, or other political corporation, or subdivision of the state, shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year without the assent of three-fifths of the voters therefor, voting at an election, to be held for that purpose....

The City urges that this constitutional provision precludes any extension of the contract terms past one year, that the purpose behind it is to require municipalities to function on a cash basis. They cite *Indep. School Dist. No. 1 v. Howard*, 336 P.2d 1097 (Okla.1959); *City of McAlester v. State*, 195 Okl. 1, 154 P.2d 579 (1944); and *In re Town of Afton*, 43 Okl. 720, 144 P. 184 (1914). Thus, the City concludes that they were not required to pay the SPIs which came due after the expiration of the contract because this would extend it past the constitutionally allowed one-year period.

Section 26 has been interpreted by this Court to restrict a municipality with regard to its financial obligations by limiting its power to incur debt. It requires that a municipality run on a cash basis, the revenue and income for each year being sufficient to meet the expenses of that year.

*Town of Red Fork v. Gantt–Baker Co.,* 130 Okl. 175, 266 P. 444, 447 (1928).

> Under section 26, art. 10, of the state Constitution it is provided that any indebtedness incurred by the county in excess of the appropriations for the fiscal year is void. The intention and plain purpose of this section is to require municipalities to carry on their corporate operations upon the cash plan ... [A]ny liability sought to be incurred by contract, express or implied, executed or executory, in excess of such current revenue in hand, or legally levied, is void, unless it be authorized by a vote of the people, and within the limitations therein provided. *News Dispatch Printing & Audit Co. v. Bd. of County Comm'rs,* 177 Okl. 162, 57 P.2d 1156, 1158 (Okla.1936).

In explaining this provision, this Court has consistently adhered to the plain meaning of the words used. *Boardman Co. v. Bd. of Comm'rs,* 136 Okl. 85, 276 P. 474, 477 (1929). Realizing that the purpose behind the constitutional provision is to safeguard the citizens of the state against carelessness or corruption of public officials charged with handling public funds, we have ruled that Section 26 "is subject to no exigency, pays no heed to convenience, expediency or emergency." *Id.* 276 P. at 477. When we are presented with a conflict between a state constitutional provision and important social policies, we are bound to follow the state constitutional provision. "[O]ur duty is clear and we have no choice." *McVicker v. Bd. of Co. Commr's,* 442 P.2d 297, 302 (Okla.1968), quoting *Faught v. City of Sapulpa,* 145 Okl. 164, 292 P. 15, 28 (1930).

In *Jurd v. City of Tulsa,* 183 Okl. 239, 80 P.2d 596 (1938), a fireman brought suit to recover wages he alleged were owed to him by the city. Although he had agreed to take a cut in pay, he claimed that the amount of his salary was set by statute and could not be altered. This Court, relying on Section 26, pointed out that "constitutional provisions and the statutes relating to fiscal management of municipalities and limiting the indebtedness thereof ... are general laws of the state and are as applicable to the expenditures ordered by the charter of the city to any other ... expenditure." We denied the fireman's claim. Similarly, in the present case, the Unions argue that statutes and the bargaining agreement require payment of SPIs. This argument, however, fails to take into account the limitations of Section 26.

Here, the Board's and the District Court's adoption of the "dynamic status quo" principle serves to extend the provisions of the contract beyond one year. Our reading of the Constitution of this state simply tells us that a city's contract is not valid if it constitutes a charge against municipal funds beyond the fiscal year. *City of McAlester v. State, supra.* As to the City's argument that they were not required to pay SPIs once the contract expired, we must agree in light of Art. 10, § 26. Extension of this provision would financially burden the city beyond the one-year constitutional limit. Hence, the ruling of the Board and the lower court is reversed insofar as it required continued payment of the salary supplements after the expiration of the contract and extending beyond the close of the fiscal year.

The dissenting opinion cites several cases to support its conclusion that the "evergreen" statute is a legislatively created obligation and therefore does not offend the constitutional ban on a municipality's obligating itself more than one year at a time. Since the evergreen statute came into existence on October 17, 1985, after execution of both the original collective bargaining agreement and the ratification for the second year thereof, that statute could not retroactively be used to perpetuate the City's obligation, and we have passed no judgment on its constitutionality. We will have to evaluate those cases advanced by the dissenters when the proper case comes before us.

### THE GRIEVANCE ISSUE

■ As a final matter we must address the third portion of the Cease and Desist Order, namely "refusing to discuss griev-

ances in good faith, including the refusal to participate in mandatory grievance arbitration." The Unions complained of the City's failure to continue paying the SPIs as a "grievance", which under the collective bargaining agreement would render it subject to binding arbitration. The Unions rely on *Nolde Bros., Inc. v. Local No. 358,* 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1976), for the proposition that the duty to arbitrate a grievance can survive the expiration of the contract if the grievance arose under the contract. In *Nolde,* the parties entered a collective bargaining agreement wherein the parties agreed to submit grievances to arbitration. After the agreement expired, the Union submitted a grievance based on the company's refusal to pay severance pay. The company refused to arbitrate because the contract had expired. The Supreme Court held that the duty to arbitrate may survive the expiration of the contract if the disputed obligation is arguably created under the contract.

*Nolde* is distinguishable from this case in a very significant way. Here the "grievance" itself, if allowed, would be unconstitutional. In *Nolde* the employer was in the private sector. No constitutional barriers impeded the employer from obligating itself past any fixed point in time. Because here the City cannot obligate itself beyond the one-year period, it would be folly to arbitrate this matter. The Unions' position in this case would be correct only if we had concluded that the earlier agreement to pay SPIs had been perpetuated into the new fiscal year as a matter of law by the "dynamic status quo" theory. We have not done so, and cannot do so, because of the Oklahoma Constitution, Art 10, Sec. 26. Although the City must comply with the FPAA in bargaining in good faith through the impasse or interest stages of negotiation, as directed earlier in this opinion, the City's failure to honor an unconstitutional demand cannot be the subject of a grievance requiring mandatory arbitration under the collective bargaining agreement. *See Mindemann v. Indep. School Dist. No. 6,* 771 P.2d 996, 1000 (Okla.1989).

The third and final numbered part of the Cease and Desist Order as affirmed by the District Court is set aside, as is the second part. The first part thereof is affirmed, and the cause is remanded to the District Court of Tulsa County for such proceedings as may be consistent herewith.

HARGRAVE, C.J., OPALA, V.C.J., and LAVENDER, DOOLIN and ALMA WILSON, JJ., concur.

HODGES and SIMMS, JJ., dissent.

KAUGER, J., recused.

HODGES, Justice, dissenting.

Today's majority opinion purports to not decide the constitutionality of the "evergreen clause" found in title 11, section 51–105. But the decision holds that the judicial equivalent of the evergreen clause, the dynamic status quo doctrine, violates article 10, section 26, of the Oklahoma Constitution and, therefore, may not be applied to the facts of this case. Thus, by implication, the evergreen clause has been struck down. The evergreen clause does not violate article 10, section 26, and the statutory duty to bargain in good faith extended the terms of the expired contract during impasse resolution.

Neither the evergreen clause nor its judicial equivalent trigger article 10, section 26. "The restrictive effect of this constitutional provision is inoperable where the contractual obligation is imposed upon a political subdivision by legislative enactment." *Board of County Comm'rs v. Oklahoma Pub. Employees Retirement Sys.,* 405 P.2d 68, 72 (Okla.1965) (discussing *City of Claremore v. Oklahoma Tax Comm'n,* 197 Okl. 223, 169 P.2d 299 (1946); *Wilson v. City of Hollis,* 193 Okl. 241, 142 P.2d 633 (1943)). Here, the obligation is imposed by the statutory requirement that the parties bargain in good faith during impasse resolution.

The city voluntarily entered the collective bargaining agreement, but the extension of the contract terms arose by operation of law from the Fire and Police Arbitration Act. "Section 26, article 10 of the State Constitution, does not apply to those liabilities which are not voluntarily incurred but

are imposed upon the municipality by the sovereign power as expressed in the Constitution and the valid acts of the Legislature." *Board of County Comm'rs v. Mullins*, 202 Okl. 628, 628, 217 P.2d 835, 837 (1950) (Syllabus by the Court no. 4). Because the extension of the terms of the contract is part of the city's duty to bargain in good faith, article 10, section 26 is inapplicable.

Although the evergreen clause was enacted after the parties entered into the collective bargaining agreement, the result does not change. By enacting the evergreen clause, the Legislature simply made explicit what was always implied in the statutory duty to negotiate in good faith.

I am authorized to state that Justice SIMMS concurs in the views expressed herein.